Reversed and Remanded and Opinion filed January 29, 2004

















Reversed and
Remanded and Opinion filed January 29, 2004.

 

 

In The

 

Fourteenth Court
of Appeals

____________

 

NO. 14-02-00639-CV

____________

 

LAUGHLIN ENVIRONMENTAL, INC., Appellant

 

V.

 

PREMIER TOWERS, L.P. AND JPF HOLDINGS, INC., Appellees

 

________________________________________________________________

 

On Appeal from the 189th District
Court

Harris County, Texas

Trial Court
Cause No. 01-19113A

 

________________________________________________________________

 

O P I N I O N

            In this case, we must determine if a
“Payment and Performance Bond” qualifies as a statutory payment bond under
sections 53.202 and 53.211 of the Texas Property Code.  Appellant Laughlin Environmental, Inc., the
lien claimant, challenges the trial court’s summary judgment in favor of the
property owner, appellee Premier Towers, L.P.,
arguing the bond at issue does not satisfy the statutory requirements and thus
does not provide the owner the corresponding statutory protections.  We agree, reverse the trial court’s judgment,
and remand this case for further proceedings.

 class=Section2>

I.  Factual and Procedural Background

            JPF Holdings, Inc., the original
property owner, entered into a written contract with Vanco
Insulation Abatement, Inc., under which Vanco was to
provide various asbestos abatement services relating to the property located at
914 Main Street in Houston, Texas
(“Property”).  The original contract
amount was $1,295,000.  In connection
with the construction work on the Property, Vanco, as
principal, and United Pacific Insurance Company, as surety, executed a
“Performance and Payment Bond” (hereinafter “Bond”) in favor of JPF Holdings,
as obligee.  

            Laughlin alleges it entered into a
subcontract with Vanco for work on this project and
that when Vanco failed to pay Laughlin for that work,
Laughlin timely filed a lien affidavit asserting a mechanic’s and materialmen’s lien (“Lien”) against the Property.  JPF Holdings later conveyed the Property to Premier Towers, L.P. by a
special warranty deed.  Laughlin sued the
surety (United Pacific Insurance Company), the original obligee
(JPF Holdings), and the current owner of the Property (Premier), seeking to
recover on the Bond and also seeking to foreclose the Lien.[1]

            Premier and JPF Holdings each filed
separate motions for summary judgment. 
Premier’s motion asserted that the Bond satisfied the requirements of
sections 53.202 and 53.211 of the Texas Property Code and therefore protected
the Property from foreclosure of the Lien under section 53.201(b) of the Texas
Property Code.  The trial court granted
Premier’s motion as well as the separate motion filed by JPF Holdings.  The trial court also cancelled and removed
all clouds on the title to the Property relating to the Lien claim.  The trial court severed Laughlin’s claims
against JPF Holdings and Premier and these defendants’ counterclaims against Laughlin
from the claims involving the surety to make the court’s judgment final.  Laughlin now appeals the trial court’s
summary judgment in favor of Premier, but does not appeal the summary judgment
in favor of JPF Holdings.  

II.  Issues and Analysis

            In
a single issue, Laughlin asserts the trial court erred in granting summary
judgment and in determining that the Bond satisfies the statutory requirements
under sections 53.202 and 53.211 of the Texas Property Code for the following
reasons:

            (1)       The Bond
is not in a penal amount at least equal to the original contract amount.

(2)       The
Bond conditions payments to payment-bond claimants “subject to the Obligee’s priority.”

            (3)       The Bond
is not conditioned on the prompt payment of claims.

            (4)       The
Bond limits payment-bond payments to the amount paid by the obligee
to the principal.

            For reasons explained below, we need
not address all of these arguments as it is clear from the record that the Bond
was not filed in compliance or attempted compliance with the statute, and thus
provides no protection from lien claims on the Property.

The Texas Payment Bond Statute

            Texas is one of
relatively few states with a statutory form of payment bond for private
construction projects.[2]  This form of bond provides an alternative
means of dealing with potential lien claims on real property.[3]  Under our state’s statutory regime, an owner
can require his general contractor to obtain a payment bond for the protection
of those furnishing labor or materials to the project.  See Tex. Prop. Code § 53.201, et
seq.  The payment bond must meet the
criteria set forth in section 53.202,[4] be
approved by the owner, and be filed in accordance with chapter 53 of the Texas
Property Code.  See Tex. Prop. Code
§§ 53.202, 53.203.  Under section 53.202,
a statutory payment bond must have the following features:

(1) it must be in a penal sum at least equal to the total of the
original contract amount;

            (2) it must be in favor of the
owner;

            (3) it must have the
written approval of the owner endorsed on it;

            (4) it must be executed by:

                        (A) the original
contractor as principal; and

(B) a corporate surety authorized and admitted to do business in this
state and licensed by this state to execute bonds as surety; and

(5) be conditioned on prompt payment for all labor, subcontracts,
materials, specially fabricated materials, and normal and usual extras not
exceeding 15 percent of the contract price.

Tex. Prop. Code § 53.202. 

            If a payment bond meets the
statutory requirements, a claimant may not file lien claims against the
property owner or seek foreclosure of the claimant’s lien on the owner’s
property.  See Tex.
Prop. Code § 53.201.  Instead of
looking to the property, claimants must look to the payment bond.  See
Tex. Prop. Code § 53.201(b).  Premier asserts the Bond complies with
section 53.202.  The undisputed
summary-judgment evidence shows otherwise. 

            Nonetheless, although section 53.202
speaks in terms of mandatory requirements for statutory payment bonds, the
Texas Property Code does not require perfect compliance with these requirements.  The legislature included a savings provision
in section 53.211(a), which allows a nonconforming payment bond to be treated
as a conforming one as long as there is “attempted compliance with [subchapter
I of Chapter 53 of the Texas Property Code]” or the bond evidences by its terms
an “intent to comply with [subchapter I of Chapter 53 of the Texas Property
Code].”[5]  Tex.
Prop. Code § 53.211(a). 
Ordinarily, one who furnishes labor or materials for construction or
repair under a private contract is entitled to a lien on the property if he is
not paid.  See Tex. Prop. Code §
53.021, et seq.  The legislature sought to provide an owner a
means of protecting his property from such liens while, at the same time,
protecting those furnishing labor and materials for construction on the owner’s
property.  Simply stated, the legislative
quid pro quo for the forced surrender of these valuable lien rights is
compliance or attempted compliance with the statute.  In the absence of compliance or attempted
compliance, the bond will not qualify for treatment as a statutory payment bond
and thus will not protect the owner from suit or the property from liens.

            For a property owner to reap the
benefits of section 53.211 and thereby enjoy the protections it affords, there
must be a bona fide attempt to comply with the statute’s requirements.  See
Sherwin-Williams Co. v. American Indem. Co., 504 S.W.2d 400, 402–03 (Tex. 1973) (holding
bond was not entitled to the benefit of predecessor statute to section 53.211,
even though bond explicitly stated that the parties intended to comply with the
Hardeman Act); Staff Indus., Inc. v.
Hallmark Contracting, Inc., 846 S.W.2d 542, 550–51 (Tex. App.—Corpus
Christi 1993, no writ) (holding party could not obtain benefits of section
53.211 because terms of bond indicated intent to comply with McGregor Act,
rather than with Hardeman Act); Sentry
Ins. Co. v. Radcliff Materials of Texas, Inc., 687 S.W.2d 437, 440–41 (Tex.
App.—Houston [14th Dist.] 1985, no writ) (holding terms of bond showed no attempt
or intent to comply with section 53.202 of the Texas Property Code).  In civil cases, an “attempt” ordinarily means
“an intent combined with an act falling short of the thing intended.”  Black’s
Law Dictionary 116 (5th ed. 1979). 


            In this case, the only evidence
attached to Premier’s motion for summary judgment is the Bond, the contract
between Vanco and JPF Holdings (which is incorporated
into the Bond), the special warranty deed transferring JPF Holdings’s
title in the Property to Premier, and an attorney’s fee affidavit.  The only summary-judgment evidence material
to any alleged attempted compliance is the Bond itself.  Therefore, in this case, the two inquiries
under section 53.211(a) (1) and (2) conflate to the issue of whether the Bond
evidences by its terms an intent to comply with the payment-bond provisions of
the Hardeman Act.  We conclude that it
does not.

            The Bond recites that all claims
against it “are subject to the terms, conditions and limitations of, laws,
statutes or codes governing this contract.” 
It does not, however, state that the relevant provisions (or any
provisions) of the Texas Property Code govern the Bond.  Cf. Sherwin-Williams Co.,
504 S.W.2d at 402–03 (holding bond was not entitled to the benefit of
predecessor statute to section 53.211, even though bond explicitly stated that
the parties intended to comply with the Hardeman Act).  The Bond does not mention the Hardeman Act or
the Texas Property Code, nor does it otherwise indicate or suggest that it is
intended to be a statutory payment bond.  The absence of these references tends to
suggest it is not.

            1. 
Is the Bond conditioned in accordance with the statutory requirements?

            Section 53.202 of the Texas Property
Code requires that a statutory bond “be conditioned on prompt payment for all
labor, subcontracts, materials, specially fabricated materials, and normal and
usual extras not exceeding 15 percent of the contract price.”  Tex.
Prop. Code § 53.202(5).  The Bond
contains conditions, but these conditions do not include the prompt payment of
these items.  Premier argues that this
requirement is effectively satisfied by the contract between Vanco and JPF Holdings, which is incorporated by reference
into the Bond.  Premier focuses on
article 6.1.2 of this contract, which requires the owner to pay Vanco once each month for all work performed during the
preceding month.  Even if the contract
requires the owner to promptly pay Vanco for the work
performed in the preceding month, nothing in this contract requires “prompt
payment for all labor, subcontracts, materials, specially fabricated materials,
and normal and usual extras not exceeding 15 percent of the contract
price.”  See Tex. Prop. Code §
53.202(5). We agree with Laughlin that the Bond is not properly conditioned and
totally fails to satisfy section 53.202(5) of the Texas Property Code.

            2.         Does
the Bond contain statutory terminology and concepts?

            Notably, the Bond does not contain
any of the recitations one would expect to see if it were intended to be
construed as a statutory payment bond. 
For example, the Bond does not recite that it is issued under the
Hardeman Act or under sections 53.201–53.211 of the Texas Property Code or that
it is the parties’ intent to comply with this statute.  Nor does the Bond incorporate the statute,
track the statutory language, or recite that the statute has priority over any
conflicting language in the Bond.  Though
Premier points to the Bond’s title — “Payment and Performance Bond” — and its provision
for the protection of subcontractors and materialmen
who are not paid for services or materials provided to the general contractor
as evidence of an intent to comply, these features are common to any payment
bond; their presence can hardly be viewed as an indication of intent to create a
statutory bond.  See Staff Indus., Inc., 846 S.W.2d at 550–51 (holding that payment
bond executed for the protection of subcontractors and materialmen
did not fall under sections 53.201–53.211 of the Texas Property Code because
the bond did not indicate an attempt or intent to comply with this part of the
Hardeman Act).  If anything, the lack of
conformity with the particulars of the statute suggests a lack of intent to
meet the statutory criteria and instead tends to show that the Bond is a
common-law payment bond.  

            If there were an intent to comply,
the terms of the Bond should show some semblance of compliance with the
requirements of section 53.202 of the Texas Property Code.  They do not. 
It is reasonable to expect that a bond intended to fall within the
statutory payment-bond provision would use statutory terminology, such as
“prompt payment” or make reference to the “15 percent” in section
53.202(5).  See Tex. Prop. Code §
53.202(5).  The Bond does not.  In fact, there is not even a hint of the drafter’s
awareness of the statute’s terms and provisions, and certainly no attempt to
track its language or incorporate its concepts.

3.         Does the Bond meet the statutory
requirement for the minimum penal sum?

 

            Section 53.202 of the Texas Property
Code requires that the penal sum of the bond be at least equal to the original
contract amount.[6]  See
Tex. Prop. Code § 53.202(1).  The original contract amount is $1,295,000,
but the penal sum of the Bond is $1,273,000. 
It is reasonable to expect that a bond intended to fall within the
statute’s protections would be in the penal sum prescribed by the statute.  The Bond is not. Moreover, there is no explanation in the record for this defect,
nor any statement that indicates the parties intended for the Bond to be in the
statutory amount.  We are left to wonder,
surmise, and speculate why the Bond is $22,000 short of the original contract
amount. 

            The presumed intent of the statute’s
“attempted compliance” provision is “to provide full payment to laborers, subcontractors and materialmen
under a bond in lieu of an action against the owner and his property.”  Sherwin-Williams,
504 S.W.2d at 402 (emphasis added). 
Because the penal sum sets the financial limits of the surety’s
obligations, it is the most material aspect of a payment bond.  See
id.  Its importance is elevated even
further for a statutory payment bond because under the statutory scheme, lien
rights are wiped out and those who furnish labor or materials are protected
only to the extent of the bond’s penal sum. 
See Tex. Prop. Code § 53.201. 


            The legislature set the penal sum
for a statutory payment bond by reference to the original contract amount,
stating that the bond must “be in a penal sum at least equal to the total of
the original contract amount.”  See Tex.
Prop. Code § 53.202(1).  Under the
plain wording of the statute, the original contract amount is the minimum amount for the penal sum of a
statutory payment bond under section 53.202 of the Texas Property Code.  The practical effect of a payment bond with a
penal sum in an amount less than the total of the original contract could be
significant.  Payments under the bond
will deplete the penal sum; if the penal sum is less than the contract amount,
it might not be sufficient to cover all potential claims, i.e. “provide full
payment to laborers, subcontractors and materialmen .
. . in lieu of an action against the owner and his property.”  Sherwin-Williams,
504 S.W.2d at 402.  Consequently, any
deviation in the required penal sum necessarily jeopardizes an owner’s ability
to show “attempted compliance.”  It would
have been the work of a moment to provide an affidavit establishing that,
though the Bond facially fails to comply with the statute, the parties intended
to meet the requirements for a statutory payment bond.  The record, like the face of the bond, is
silent on intent to comply with the statute. 


            The Texas Supreme Court has refused
to find attempted compliance even when the bond contained an express statement
of intent to comply with the statute because there was a substantial defect in
the penal sum of the bond.  In Sherwin-Williams Co., our high court
stated:

The substantial defect in amount of the express terms of the . . . bond
conclusively rebuts any argument that the bond was furnished and filed in
attempted compliance with the Hardeman Act, or that there was any intent to
comply with the requirements of the Act. 


 

Sherwin-Williams Co., 504
S.W.2d at 402.  The penal sum of the bond
in Sherwin-Williams Co. was less than
half of the amount of the original contract; the penal sum of the Bond in this
case is much closer to the original contract amount.  Nonetheless, the failure of the Bond to
comply with the requirements of section 53.202 and to reflect an intent to
comply with the statute leads us to conclude, as the supreme court did in Sherwin-Williams Co., that the Bond’s
terms do not evidence an intent to comply with the payment-bond provisions of
the Hardeman Act.  See id.; Sentry, Inc.,
687 S.W.2d at 441 (stating it is not within this court’s authority to
completely reconstruct the bond so that it will qualify as a statutory payment
bond).  

            This holding not only comports with
the plain language of the statute but also furthers its purpose.  In the construction arena, there is always the
risk that the contractor will fail to make payment to its subcontractors,
laborers or suppliers, who might then file lien claims against the owner’s
property.  The statutory payment bond is
intended to protect the owner from this risk by assuring payment of a
contractor’s obligations to subcontractors and suppliers.  Our lawmakers, recognizing that the property
owner was the one who stood to gain the most from the statutory payment bond,
placed the burden on the property owner to ensure statutory compliance.  The legislature designed the statute so that
the property owner seeking protection under it is required to give written approval of the payment bond before it is filed.  See
Tex. Prop. Code § 53.202(3).  In placing this burden on the property owner,
the legislature clearly assigned the risk of noncompliance to the owner.  Here, JPF Holdings, the original owner, had
the opportunity to measure the Bond’s compliance against the statute. Despite
the Bond’s clear departure from the statutory criteria, JPF Holdings gave
written approval of it.  When Premier
later acquired the Property from JPF Holdings, it assumed the risks of the
Bond’s noncompliance with the statute.

            Because there has been no showing of
compliance, attempted compliance, or an intent to comply with the payment-bond
provisions of the Hardeman Act, section 53.211(b) cannot be used to alter the
provisions of the Bond.[7]  See
Tex. Prop. Code § 53.211(b)
(stating it applies only to “any payment bond furnished or filed in attempted
compliance with this subchapter”).  Based
on the noted defects, the Bond does not have the legal effect of a statutory
payment bond, and is nothing more than a common-law payment bond.  As such, common-law principles, not the
statutory protections, apply.  

            Therefore, the requirements for
making a claim and filing suit on the Bond are governed by the terms of the
Bond itself, as well as applicable common-law principles.  More importantly, because the statute does
not apply, the Bond does not operate to preclude the Lien claim against the
Property.  Thus, it was improper for the
trial court to grant summary judgment in favor of the property owner and to
remove the Lien on the Property. Accordingly, we sustain Laughlin’s sole issue
on appeal.

III.  Conclusion

            Subchapter I of chapter 53 of the
Texas Property Code expressly outlines the necessary procedures and
requirements to qualify for its benefits. 
A property owner seeking to come within the statute’s protection must
show a bona fide attempt to comply.  Even
under a liberal reading of section 53.211(a), the Bond cannot be transformed
into a statutory payment bond because neither its terms nor any other evidence
in the record reflects an attempt or intent to comply with the statute.  Absent such a showing, the Bond does not have
the legal effect of a statutory payment bond. 
The trial court erred in finding it did. 
Accordingly, we reverse the trial court’s judgment and remand this case
for further proceedings consistent with this opinion.  

 

                                                                        /s/        Kem Thompson Frost

                                                                                    Justice

 

Judgment rendered and
Opinion filed January 29, 2004.

Panel consists of Justices Yates,
Hudson, and Frost.

 











            [1]  Laughlin alleges that Vanco
has filed for bankruptcy and that Union Pacific Insurance Company is in
receivership. 

 





            [2]  See,
e.g., La. Rev. Stat. Ann. §
9:4812 (West 2003); Fla. Stat. Ann.
§ 713.23 (West 2003) for payment-bond requirements under Louisiana and Florida law,
respectively.





            [3]  Subcontractors and suppliers are the
“beneficiaries” of a payment bond.  By
contrast, a performance bond is only for the benefit of the obligee/owner
of the construction project. 
Subcontractors and suppliers generally do not have the right to seek
payment from the performance bond surety if the principal defaults.  

 





            [4]  Texas Property Code sections 53.201–53.211
incorporated the provisions of the Hardeman Act (Tex. Rev. Civ. Stat. Ann. arts.
5452–5472e).  Thus, some courts have
continued to refer to the Hardeman Act generally, while citing to the
appropriate sections of the Texas Property Code.  See
Sentry Ins. Co. v. Radcliff Materials of Texas, Inc., 687 S.W.2d 437, 440
n.1 (Tex. App.—Houston [14th Dist.] 1985, no writ).





            [5]  Section 53.211(a) of the Property Code,
entitled “Attempted Compliance,”states:

 

A
bond shall be construed to comply with this subchapter, and the rights and
remedies on the bond are enforceable in the same manner as on other bonds under
this subchapter, if  the bond:

(1)
is furnished and filed in attempted compliance with this subchapter;  or

(2)
evidences by its terms intent to comply with this subchapter.  

 





            [6]  The penal sum — the face amount of the bond —
is the maximum amount the surety can be required to pay in the event of a
default by the principal.  See Great Am. Ins. Co. v. No. Austin Mun. Utility Dist. No. 1, 908 S.W.2d 415, 426–27 (Tex. 1995)
(holding claimant could not recover damages from performance-bond surety in
excess of the face amount of the bond).





            [7]  According to this statute, “[a]ny provision in any payment bond furnished or filed in
attempted compliance with this subchapter that expands or restricts the rights
or liabilities provided under this chapter shall be disregarded and the
provisions of this subchapter shall be read into that bond.”  See
Tex. Prop. Code § 53.211(b).