**PAVECON, INC., Appellant,**

v.

**R–COM, INC. and International Fidelity Insurance Company, Appellees.**

**No. 2–04–114–CV.**

Court of Appeals of Texas, Fort Worth.

Feb. 17, 2005.

---

Jones & Cannon, P.C., Bryan Cannon, Michael Hassett, Arlington, for Appellant.

Winstead, Seacrest & Minick, P.C., Dale E. Butler, Dallas, for Appellee.

Panel A: CAYCE, C.J.; LIVINGSTON and McCOY, JJ.

## OPINION

JOHN CAYCE, Chief Justice.

In this construction bond case, Pavecon, Inc. appeals from a take-nothing judgment for International Fidelity Insurance Company (IFIC), the surety on the bond.[1] In three issues, Pavecon complains that the trial court improperly granted IFIC judgment on Pavecon's claims and denied Pavecon's motion for new trial because the law, stipulated facts, and other evidence show that Pavecon is entitled to recover from IFIC on the bond. We will affirm.

The facts of this case are largely undisputed. At trial, the parties stipulated to the following facts:

During May through December 2001, Pavecon, pursuant to a contract with R–Com, furnished concrete services and materials[2] to R–Com worth in excess of $200,000. R–Com paid for some of these services and materials, so that Pavecon's records reflected an outstanding principal balance of $97,960.26.

Meanwhile, on or about July 12, 2001, IFIC issued a payment bond with R–Com as principal and ASCI Network Technologies as obligee. The penal sum of the bond was $1,772,800.[3]

Between August 15 and December 17, 2001, Pavecon properly performed work requested for and authorized by R–Com referenced in eleven different invoices totaling $85,183.26. Pavecon contends that all of the August through December 2001 invoices represent work covered by the IFIC bond; IFIC agrees that eight of the invoices, totaling $66,272.12, reflect work on R–Com jobs covered by the IFIC bond. On April 17, 2002, Pavecon first notified IFIC that Pavecon was owed for work covered by the IFIC bond. Pavecon made a claim for $85,183.26 on the IFIC bond, which IFIC has not paid.

In addition to the stipulated facts, the record also shows the following: Pavecon repeatedly asked R–Com for a copy of the bond or for information about the bond and the jobs it covered, but R–Com did not provide any information until January 23, 2002—three months before Pavecon first provided IFIC notice of R–Com's nonpayment. When IFIC refused to pay Pavecon's claims against the bond, Pavecon

---

1. R–Com, Inc., another of the defendants below, is also listed on the notice of appeal, but Pavecon does not raise any appellate complaints concerning R–Com.

2. The record shows that these services and materials were for the installation of manholes.

3. The penal sum, which is the face amount of the bond, is the maximum amount the surety can be required to pay in the event of a default by the principal. *Great Am. Ins. Co. v. N. Austin Mun. Util. Dist. No. 1,* 908 S.W.2d 415, 426–27 (Tex.1995); *Laughlin Envtl., Inc. v. Premier Towers, L.P.,* 126 S.W.3d 668, 676 (Tex.App.-Houston [14th Dist.] 2004, no pet.).

sued to collect them. IFIC asserted as an affirmative defense to Pavecon's claims Pavecon's alleged failure to comply with the bond terms and the notice provisions of chapter 53 of the property code. After a bench trial, the trial court rendered a take-nothing judgment for IFIC. Pavecon also filed a motion for new trial, which the trial court denied. This appeal followed.

In three issues, Pavecon complains that the judgment for IFIC is against the great weight and preponderance of the evidence and is contrary to law.

■■■ No findings of fact or conclusions of law were filed in this case; therefore, the trial court's judgment implies all findings of fact necessary to support it. *Pharo v. Chambers County*, 922 S.W.2d 945, 948 (Tex.1996). But where, as here, a reporter's record is filed, these implied findings are not conclusive, and Pavecon may challenge them by raising both legal and factual sufficiency of the evidence issues. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex.2002). In reviewing an issue asserting that a finding is against the great weight and preponderance of the evidence, we must consider and weigh all of the evidence and set aside the finding only if the evidence is so weak or the finding is so contrary to the great weight and preponderance of the evidence as to be clearly wrong and unjust. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951). If our review of the record shows that the implied fact findings are supported by the evidence, it is our duty to uphold the trial court's judgment on any theory of law applicable to the case. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex.1990); *Point Lookout W., Inc. v. Whorton*, 742 S.W.2d 277, 278 (Tex.1987).

IFIC's bond provides that, because ASCI, the property owner, required R–Com to furnish the bond

> in order to comply with sections 53.201 et seq. of the Texas Property Code, *all rights and remedies under this bond shall inure solely to [claimants for labor, subcontracts, and materials] and shall be determined in accordance with the provisions, conditions and limitations of said Property Code to the same extent as if they were copied at length herein.* [Emphasis supplied.]

The parties' dispute centers around their interpretation of the language italicized above and chapter 53 of the property code.

■■■ Common law contract principles apply to surety bonds and questions relating to a surety's liability. *Great Am. Ins. Co.*, 908 S.W.2d at 420, 427.[4] Therefore, the intent of the parties to a surety bond, as well as the liability of the surety, are normally determined by the language of the bond. *Geters v. Eagle Ins. Co.*, 834 S.W.2d 49, 50 (Tex.1992); *Howze v. Sur. Corp. of Am.*, 584 S.W.2d 263, 266 (Tex. 1979); *Beard Family P'ship v. Commercial Indem. Ins. Co.*, 116 S.W.3d 839, 846 (Tex.App.-Austin 2003, no pet.). We are to interpret a contract in such a manner that none of its provisions will be rendered meaningless. *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 652 (Tex.1999). When possible, we will avoid a construction that is unreasonable, inequitable, or oppressive, or would lead to an absurd result. *Reilly v. Rangers Mgmt., Inc.*, 727 S.W.2d 527, 530 (Tex.1987); *Lane v. Travelers Indem. Co.*, 391 S.W.2d 399, 402 (Tex.1965).

**4.** We are unpersuaded by Pavecon's argument that contract principles should not apply to nonstatutory bonds because the purpose of such bonds is to protect unpaid claimants.

Property code section 53.205, which is incorporated by reference into IFIC's bond, provides that the bond protects only those persons whose claims are (1) perfected in the manner prescribed for fixing a lien under subchapters C and K of the property code or (2) perfected in the manner prescribed by section 53.206. TEX. PROP.CODE ANN. § 53.205(a) (Vernon Supp. 2004–05). It is undisputed that Pavecon did not perfect its claim in the manner prescribed for fixing a lien under subchapter C and that subchapter K has no application to this case.[5] Therefore, we turn our attention to the alternative manner for perfecting a claim prescribed by section 53.206.

> Section 53.206 provides:
>
> (a) To perfect a claim against a bond in a manner other than that prescribed by Subchapter C or K for fixing a lien, a person must:
>
> . . . .
>
> (2) give to the surety on the bond, instead of the owner, all notices under the appropriate subchapter required to be given to the owner.

*Id.* § 53.206(a).

The parties agree that IFIC's bond is not a statutory bond covered by the property code.[6] Pavecon asserts that, because IFIC's bond is not a statutory bond, there is no "appropriate subchapter" of the property code covering the bond and that the express terms of the bond therefore required no notice from Pavecon to IFIC in order for Pavecon to perfect its claims against the bond. Pavecon also argues

that the bond only incorporates the provisions of property code "sections 53.201 et seq." and thus did not require Pavecon to comply with any notice provisions in earlier-numbered sections of the property code. Finally, Pavecon contends that, if it is subject to the property code's notice requirements, IFIC is estopped from asserting Pavecon's failure to comply with those requirements as a defense to payment due to IFIC's own failure to comply with other property code provisions. We will address these arguments in turn.

Regarding Pavecon's first argument, its interpretation of "the appropriate subchapter" in section 53.206 would render meaningless the bond's provision that a claimant's rights and remedies "shall be determined in accordance with the provisions, conditions[,] and limitations of said Property Code." *See MCI Telecomms. Corp.*, 995 S.W.2d at 652 (disfavoring meaningless contract interpretation). IFIC, on the other hand, asserts that the "appropriate subchapter" in section 53.206 refers to subchapter C or K, and in this case, subchapter C. We agree.

IFIC further contends that section 53.206(a) applies subchapter C's notice provision, which is found in section 53.056(b), to a subcontractor's claims against a surety bond. Section 53.056(b) requires a subcontractor to give the owner written notice of the unpaid balance of a claim by the 15th day of the third month after the month in which the materials or services were provided.[7] Section

---

5. Subchapter C contains the requirements for perfecting a lien for materials and services by affidavit. *Id.* § 53.051 (Vernon 1995), §§ 53.052–.058 (Vernon Supp.2004–05). Subchapter K contains additional requirements for perfecting a lien on a residential construction project. *Id.* §§ 53.251–.260.

6. *See id.* §§ 53.201–.202 (allowing original contractor to furnish owner a statutory bond for the benefit of claimants and setting out the requirements therefor).

7. Section 53.056(b) provides, in pertinent part: "The claimant must give [written notice of the unpaid balance] to the owner or reputed owner ... not later than the 15th day of

53.206(a)(2) requires the subcontractor desiring to perfect a claim against a surety bond to give this notice to the surety instead of the owner. *Id.* § 53.206(a)(2). IFIC asserts that the bond, which incorporates these statutory provisions, required Pavecon to give this notice to IFIC and that, because Pavecon failed to do so, Pavecon cannot recover on its claims against IFIC's bond. This construction gives effect to the bond provision and is also in accordance with the plain meaning of sections 53.206(a) and 53.056(b). *See State ex rel. State Dep't of Highways & Pub. Transp. v. Gonzalez,* 82 S.W.3d 322, 327 (Tex.2002) (stating that statute should be construed as a whole according to plain and common meaning of words used).

■ The language of former section 53.206(a) is also consistent with IFIC's construction of "the appropriate subchapter." Former section 53.206(a) provided: "To perfect a claim against a bond in a manner other than that prescribed by Subchapter C ... a person must ... give to the surety on the bond, instead of the owner, all notices under *that subchapter* required to be given to the owner." [8] The legislature merely substituted "the appropriate subchapter" for "that subchapter" when it added subchapter K to chapter 53 and referenced both it and subchapter C in current section 53.206(a).[9] *See Argonaut Ins. Co. v. Baker,* 87 S.W.3d 526, 530–31 (Tex.2002) ("A statute is presumed to have been enacted by the legislature with complete knowledge of the existing law and with reference to it."). While lien statutes in Texas are to be liberally construed to protect laborers and materialmen, "we cannot be blind to the plain language" of a statute. *RepublicBank Dallas, N.A. v. Interkal, Inc.,* 691 S.W.2d 605, 607 (Tex. 1985). Accordingly, we conclude that IFIC's construction of "the appropriate subchapter" is correct.

Next, Pavecon argues that "said Property Code" in the bond provision refers only to "sections 53.201 et seq." and therefore prevents reference to any earlier-numbered sections of the property code in determining whether Pavecon satisfied the bond's notice requirements. Such an interpretation would also render the bond provision meaningless and would lead to an absurd result. *See Reilly,* 727 S.W.2d at 530; *Lane,* 391 S.W.2d at 402 (both disfavoring unreasonable and absurd results). When read in conjunction with section 53.206, Pavecon's position would require *some type* of notice to perfect a claim against the bond—notice under "the appropriate subchapter." But Pavecon's interpretation would preclude reference to subchapter C, one of the two appropriate subchapters listed in section 53.206, to determine what notice is required because subchapter C precedes section 53.201 numerically in the property code.[10] Such an interpretation would harm claimants as well as sureties by preventing claimants from proving that they had given proper notice under "section 53.201 et seq." and under section 53.206 in particular.

For the foregoing reasons, we hold that the phrase "said Property Code" in the

the third month in which all or part of the claimant's labor was performed or material ... was delivered." *Id.* § 53.056(b).

**8.** *See* Act of May 26, 1983, 68th Leg., R.S., ch. 576, § 53.206, 1983 Tex. Gen. Laws 3475, 3552 (emphasis supplied).

**9.** *See* Act of May 21, 1999, 76th Leg., R.S., ch. 889, § 6, 1999 Tex. Gen. Laws 3586, 3587; *see also* Tex. Prop.Code Ann. § 53.206 historical note (Vernon Supp.2004–05).

**10.** Subchapter C consists of sections 53.052–.058; subchapter K, which consists of sections 53.251–.260, does not precede section 53.201 numerically.

bond does not preclude reference to subchapter C in determining whether Pavecon satisfied the bond's notice requirements. Thus, in order to recover on its claims against the bond, Pavecon was required to give IFIC written notice of R–Com's unpaid balances by the 15th day of the third month following the respective months in which Pavecon had provided the services and materials. TEX. PROP.CODE ANN. §§ 53.056(b), .206(a). The parties stipulated that the latest date on which Pavecon provided services and materials for R–Com was December 17, 2001 and that Pavecon did not provide IFIC any notice of R–Com's unpaid balances until April 17, 2002. April 17 was the 17th day of the *fourth* month following December 2001; therefore, the record supports the trial court's implied finding that Pavecon's notice to IFIC was untimely and did not perfect its claims against the bond. *See Dow Chem. Co.*, 46 S.W.3d at 242.

■ We turn now to Pavecon's estoppel argument. Pavecon asserts that, if it is bound by section 53.056's notice requirement, then IFIC should be bound by section 53.203(a)'s filing requirement. Section 53.203(a) provides: "The bond and the contract between the original contractor and the owner shall be filed with the county clerk of the county in which is located all or part of the owner's property on which the construction or repair is being performed or is to be performed." *Id.* § 53.203(a) (Vernon 1995). Pavecon asserts that, because IFIC did not file its bond with the Tarrant County Clerk, where the work was to be performed, Pavecon did not receive adequate notice of the bond provisions, and IFIC is estopped from asserting Pavecon's lack of timely notice to IFIC as a defense to payment of Pavecon's claims.

We are unpersuaded by this argument. First, although a statutory surety bond benefits claimants,[11] the statute expressly provides that the purpose of the filing requirement is to protect the property owner. *See id.* § 53.201(b) (Vernon Supp. 2004–05) ("If a valid bond is filed, a claimant may not file suit against the owner or the owner's property and the owner is relieved of obligations [related to the withholding of retainage and other funds for the benefit of claimants]."); *see also id.* §§ 53.81, .101 (Vernon 1995). Thus the adverse consequence contemplated by the statute for failure to file the bond is that the property owner—not the surety—is unprotected from a suit by the unpaid claimant. In this case, Pavecon did not sue ASCI, the property owner.

Second, nothing in section 53.203(a) mentions the surety or requires the surety to file the bond with the county clerk. Instead, the statute merely provides that the bond "shall be filed." *Id.* § 53.203(a). Because the plain language of section 53.203(a) does not put the onus of filing the bond on the surety, IFIC's bond, which incorporates section 53.203(a) by reference, likewise did not require IFIC to file the bond. *See Nat'l Liab. & Fire Ins. Co. v. Allen,* 15 S.W.3d 525, 527 (Tex.2000) (stating that legislature's statutory intent should be determined from plain and common meaning of words used).

Moreover, because the property owner is the only party who derives a statutory benefit from the filing of the bond, or stands to lose a statutory benefit from its nonfiling, we decline to construe the statute as making the surety responsible for filing the bond. If the legislature had desired to place the filing requirement on the surety, it easily could have done so.

---

11. *See id.* § 53.201(a). As we have discussed, claimants are protected only if they comply with sections 53.205–.206, which Pavecon did not.

*See RepublicBank Dallas,* 691 S.W.2d at 607; *Simmons v. Arnim,* 110 Tex. 309, 220 S.W. 66, 70 (1920) (both holding that courts must take statutes as they find them and are not responsible for omissions in legislation).

Because section 53.203(a)'s filing requirement, which is incorporated into the bond by reference, did not require IFIC to file the bond, the record supports the trial court's implied finding that IFIC is not estopped from asserting Pavecon's lack of timely notice of R–Com's nonpayment as a defense to IFIC's payment of Pavecon's claims. *See Dow Chem. Co.,* 46 S.W.3d at 242. Accordingly, we hold that the trial court's judgment for IFIC is proper. We overrule Pavecon's issues and affirm the trial court's judgment.