COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-04-114-CV
  
  
PAVECON, INC.                                                                     APPELLANT
  
V.
  
R-COM, INC. AND                                                                  APPELLEES
INTERNATIONAL FIDELITY
INSURANCE COMPANY
   
   
------------
 
FROM THE 17TH DISTRICT COURT 
OF TARRANT COUNTY
 
------------
 
OPINION
 
------------
        In 
this construction bond case, Pavecon, Inc. appeals from a take-nothing judgment 
for International Fidelity Insurance Company (IFIC), the surety on the bond.[1]  In three issues, Pavecon complains that the trial 
court improperly granted IFIC judgment on Pavecon’s claims and denied 
Pavecon’s motion for new trial because the law, stipulated facts, and other 
evidence show that Pavecon is entitled to recover from IFIC on the bond. We will 
affirm.
        The 
facts of this case are largely undisputed. At trial, the parties stipulated to 
the following facts:
        During 
May through December 2001, Pavecon, pursuant to a contract with R-Com, furnished 
concrete services and materials[2] to R-Com worth in 
excess of $200,000.  R-Com paid for some of these services and materials, 
so that Pavecon’s records reflected an outstanding principal balance of 
$97,960.26.
        Meanwhile, 
on or about July 12, 2001, IFIC issued a payment bond with R-Com as principal 
and ASCI Network Technologies as obligee.  The penal sum of the bond was 
$1,772,800.[3]
        Between 
August 15 and December 17, 2001, Pavecon properly performed work requested for 
and authorized by R-Com referenced in eleven different invoices totaling 
$85,183.26.  Pavecon contends that all of the August through December 2001 
invoices represent work covered by the IFIC bond; IFIC agrees that eight of the 
invoices, totaling $66,272.12, reflect work on R-Com jobs covered by the IFIC 
bond. On April 17, 2002, Pavecon first notified IFIC that Pavecon was owed for 
work covered by the IFIC bond. Pavecon made a claim for $85,183.26 on the IFIC 
bond, which IFIC has not paid.
        In 
addition to the stipulated facts, the record also shows the following: Pavecon 
repeatedly asked R-Com for a copy of the bond or for information about the bond 
and the jobs it covered, but R-Com did not provide any information until January 
23, 2002—three months before Pavecon first provided IFIC notice of R-Com’s 
nonpayment. When IFIC refused to pay Pavecon’s claims against the bond, 
Pavecon sued to collect them. IFIC asserted as an affirmative defense to 
Pavecon’s claims Pavecon’s alleged failure to comply with the bond terms and 
the notice provisions of chapter 53 of the property code. After a bench trial, 
the trial court rendered a take-nothing judgment for IFIC. Pavecon also filed a 
motion for new trial, which the trial court denied. This appeal followed.
        In 
three issues, Pavecon complains that the judgment for IFIC is against the great 
weight and preponderance of the evidence and is contrary to law.
        No 
findings of fact or conclusions of law were filed in this case; therefore, the 
trial court’s judgment implies all findings of fact necessary to support it. Pharo 
v. Chambers County, 922 S.W.2d 945, 948 (Tex. 1996). But where, as here, a 
reporter’s record is filed, these implied findings are not conclusive, and 
Pavecon may challenge them by raising both legal and factual sufficiency of the 
evidence issues. BMC Software Belg., N.V. v. Marchand, 83 S.W.3d 789, 795 
(Tex. 2002). In reviewing an issue asserting that a finding is against the great 
weight and preponderance of the evidence, we must consider and weigh all of the 
evidence and set aside the finding only if the evidence is so weak or the 
finding is so contrary to the great weight and preponderance of the evidence as 
to be clearly wrong and unjust. Dow Chem. Co. v. Francis, 46 S.W.3d 237, 
242 (Tex. 2001); In re King's Estate, 150 Tex. 662, 244 S.W.2d 660, 661 
(1951). If our review of the record shows that the implied fact findings are 
supported by the evidence, it is our duty to uphold the trial court’s judgment 
on any theory of law applicable to the case. Worford v. Stamper, 801 
S.W.2d 108, 109 (Tex. 1990); Point Lookout W., Inc. v. Whorton, 742 
S.W.2d 277, 278 (Tex. 1987).
        IFIC’s 
bond provides that, because ASCI, the property owner, required R-Com to furnish 
the bond
   
in order to comply with sections 53.201 et seq. of the Texas Property Code, all 
rights and remedies under this bond shall inure solely to [claimants for labor, 
subcontracts, and materials] and shall be determined in accordance with the 
provisions, conditions and limitations of said Property Code to the same extent 
as if they were copied at length herein. [Emphasis supplied.]
  
        The 
parties’ dispute centers around their interpretation of the language 
italicized above and chapter 53 of the property code.
        Common 
law contract principles apply to surety bonds and questions relating to a 
surety’s liability. Great Am. Ins. Co., 908 S.W.2d at 420, 427.[4]  Therefore, the intent of the parties to a surety 
bond, as well as the liability of the surety, are normally determined by the 
language of the bond. Geters v. Eagle Ins. Co., 834 S.W.2d 49, 50 (Tex. 
1992); Howze v. Sur. Corp. of Am., 584 S.W.2d 263, 266 (Tex. 1979); Beard 
Family P’ship v. Commercial Indem. Ins. Co., 116 S.W.3d 839, 846 (Tex. 
App.—Austin 2003, no pet.). We are to interpret a contract in such a manner 
that none of its provisions will be rendered meaningless. MCI Telecomms. 
Corp. v. Tex. Utils. Elec. Co., 995 S.W.2d 647, 652 (Tex. 1999). When 
possible, we will avoid a construction that is unreasonable, inequitable, or 
oppressive, or would lead to an absurd result. Reilly v. Rangers Mgmt., Inc., 
727 S.W.2d 527, 530 (Tex. 1987); Lane v. Travelers Indem. Co., 391 S.W.2d 
399, 402 (Tex. 1965).
        Property 
code section 53.205, which is incorporated by reference into IFIC’s bond, 
provides that the bond protects only those persons whose claims are (1) 
perfected in the manner prescribed for fixing a lien under subchapters C and K 
of the property code or (2) perfected in the manner prescribed by section 
53.206. Tex. Prop. Code Ann. § 
53.205(a) (Vernon Supp. 2004-05). It is undisputed that Pavecon did not perfect 
its claim in the manner prescribed for fixing a lien under subchapter C and that 
subchapter K has no application to this case.[5]  
Therefore, we turn our attention to the alternative manner for perfecting a 
claim prescribed by section 53.206.
        Section 
53.206 provides:
   
(a) To perfect a claim against a bond in a manner other than that prescribed by 
Subchapter C or K for fixing a lien, a person must:
 
                . 
. . .
 
(2) 
give to the surety on the bond, instead of the owner, all notices under the 
appropriate subchapter required to be given to the owner.
 
Id. § 53.206(a).
 
        The 
parties agree that IFIC’s bond is not a statutory bond covered by the property 
code.[6]  Pavecon asserts that, because IFIC’s 
bond is not a statutory bond, there is no “appropriate subchapter” of the 
property code covering the bond and that the express terms of the bond therefore 
required no notice from Pavecon to IFIC in order for Pavecon to perfect its 
claims against the bond. Pavecon also argues that the bond only incorporates the 
provisions of property code “sections 53.201 et seq.” and thus did not 
require Pavecon to comply with any notice provisions in earlier-numbered 
sections of the property code. Finally, Pavecon contends that, if it is subject 
to the property code’s notice requirements, IFIC is estopped from asserting 
Pavecon’s failure to comply with those requirements as a defense to payment 
due to IFIC’s own failure to comply with other property code provisions. We 
will address these arguments in turn.
        Regarding 
Pavecon’s first argument, its interpretation of “the appropriate 
subchapter” in section 53.206 would render meaningless the bond’s provision 
that a claimant’s rights and remedies “shall be determined in accordance 
with the provisions, conditions[,] and limitations of said Property Code.” See 
MCI Telecomms. Corp., 995 S.W.2d at 652 (disfavoring meaningless contract 
interpretation). IFIC, on the other hand, asserts that the “appropriate 
subchapter” in section 53.206 refers to subchapter C or K, and in this case, 
subchapter C. We agree.
        IFIC 
further contends that section 53.206(a) applies subchapter C’s notice 
provision, which is found in section 53.056(b), to a subcontractor’s claims 
against a surety bond. Section 53.056(b) requires a subcontractor to give the 
owner written notice of the unpaid balance of a claim by the 15th day of the 
third month after the month in which the materials or services were provided. [7] 
Section 53.206(a)(2) requires the subcontractor desiring to perfect a claim 
against a surety bond to give this notice to the surety instead of the owner. Id. 
§ 53.206(a)(2). IFIC asserts that the bond, which incorporates these statutory 
provisions, required Pavecon to give this notice to IFIC and that, because 
Pavecon failed to do so, Pavecon cannot recover on its claims against IFIC’s 
bond. This construction gives effect to the bond provision and is also in 
accordance with the plain meaning of sections 53.206(a) and 53.056(b). See 
State ex rel. State Dep’t of Highways & Pub. Transp. v. Gonzalez, 82 
S.W.3d 322, 327 (Tex. 2002) (stating that statute should be construed as a whole 
according to plain and common meaning of words used).
        The 
language of former section 53.206(a) is also consistent with IFIC’s 
construction of “the appropriate subchapter.” Former section 53.206(a) 
provided: “To perfect a claim against a bond in a manner other than that 
prescribed by Subchapter C . . . a person must . . . give to the surety on the 
bond, instead of the owner, all notices under that subchapter required to 
be given to the owner.”[8]  The legislature 
merely substituted “the appropriate subchapter” for “that subchapter” 
when it added subchapter K to chapter 53 and referenced both it and subchapter C 
in current section 53.206(a).[9]  See Argonaut 
Ins. Co. v. Baker, 87 S.W.3d 526, 530-31 (Tex. 2002) (“A statute is 
presumed to have been enacted by the legislature with complete knowledge of the 
existing law and with reference to it.”). While lien statutes in Texas are to 
be liberally construed to protect laborers and materialmen, “we cannot be 
blind to the plain language” of a statute. Republicbank Dallas, N.A. v. 
Interkal, Inc., 691 S.W.2d 605, 607 (Tex. 1985).  Accordingly, we 
conclude that IFIC’s construction of “the appropriate subchapter” is 
correct.
        Next, 
Pavecon argues that “said Property Code” in the bond provision refers only 
to “sections 53.201 et seq.” and therefore prevents reference to any 
earlier-numbered sections of the property code in determining whether Pavecon 
satisfied the bond’s notice requirements.  Such an interpretation would 
also render the bond provision meaningless and would lead to an absurd 
result.  See Reilly, 727 S.W.2d at 530; Lane, 391 S.W.2d at 
402 (both disfavoring unreasonable and absurd results).  When read in 
conjunction with section 53.206, Pavecon’s position would require some type 
of notice to perfect a claim against the bond—notice under “the appropriate 
subchapter.”   But Pavecon’s interpretation would preclude 
reference to subchapter C, one of the two appropriate subchapters listed in 
section 53.206, to determine what notice is required because subchapter C 
precedes section 53.201 numerically in the property code.[10]  
Such an interpretation would harm claimants as well as sureties by preventing 
claimants from proving that they had given proper notice under “section 53.201 
et seq.” and under section 53.206 in particular.
        For 
the foregoing reasons, we hold that the phrase “said Property Code” in the 
bond does not preclude reference to subchapter C in determining whether Pavecon 
satisfied the bond’s notice requirements.  Thus, in order to recover on 
its claims against the bond, Pavecon was required to give IFIC written notice of 
R-Com’s unpaid balances by the 15th day of the third month following the 
respective months in which Pavecon had provided the services and materials. Tex. Prop. Code Ann. §§ 53.056(b), 
.206(a).  The parties stipulated that the latest date on which Pavecon 
provided services and materials for R-Com was December 17, 2001 and that Pavecon 
did not provide IFIC any notice of R-Com’s unpaid balances until April 17, 
2002.  April 17 was the 17th day of the fourth month following 
December 2001; therefore, the record supports the trial court’s implied 
finding that Pavecon’s notice to IFIC was untimely and did not perfect its 
claims against the bond.  See Dow Chem. Co., 46 S.W.3d at 242.
        We 
turn now to Pavecon’s estoppel argument. Pavecon asserts that, if it is bound 
by section 53.056's notice requirement, then IFIC should be bound by section 
53.203(a)'s filing requirement. Section 53.203(a) provides: “The bond and the 
contract between the original contractor and the owner shall be filed with the 
county clerk of the county in which is located all or part of the owner’s 
property on which the construction or repair is being performed or is to be 
performed.” Id. § 53.203(a) (Vernon 1995). Pavecon asserts that, 
because IFIC did not file its bond with the Tarrant County Clerk, where the work 
was to be performed, Pavecon did not receive adequate notice of the bond 
provisions, and IFIC is estopped from asserting Pavecon’s lack of timely 
notice to IFIC as a defense to payment of Pavecon’s claims.
        We 
are unpersuaded by this argument. First, although a statutory surety bond 
benefits claimants,[11] the statute expressly 
provides that the purpose of the filing requirement is to protect the property 
owner. See id. § 53.201(b) (Vernon Supp. 2004-05) (“If a valid bond is 
filed, a claimant may not file suit against the owner or the owner’s property 
and the owner is relieved of obligations [related to the withholding of 
retainage and other funds for the benefit of claimants].”); see also id. 
§§ 53.81, .101 (Vernon 1995). Thus the adverse consequence contemplated by the 
statute for failure to file the bond is that the property owner—not the 
surety—is unprotected from a suit by the unpaid claimant. In this case, 
Pavecon did not sue ASCI, the property owner.
        Second, 
nothing in section 53.203(a) mentions the surety or requires the surety to file 
the bond with the county clerk. Instead, the statute merely provides that the 
bond “shall be filed.” Id. § 53.203(a). Because the plain language 
of section 53.203(a) does not put the onus of filing the bond on the surety, 
IFIC’s bond, which incorporates section 53.203(a) by reference, likewise did 
not require IFIC to file the bond. See Nat’l Liab. & Fire Ins. Co. v. 
Allen, 15 S.W.3d 525, 527 (Tex. 2000) (stating that legislature’s 
statutory intent should be determined from plain and common meaning of words 
used).
        Moreover, 
because the property owner is the only party who derives a statutory benefit 
from the filing of the bond, or stands to lose a statutory benefit from its 
nonfiling, we decline to construe the statute as making the surety responsible 
for filing the bond. If the legislature had desired to place the filing 
requirement on the surety, it easily could have done so. See Republicbank 
Dallas, 691 S.W.2d at 607; Simmons v. Arnim, 110 Tex. 309, 220 S.W. 
66, 70 (1920) (both holding that courts must take statutes as they find them and 
are not responsible for omissions in legislation).
        Because 
section 53.203(a)’s filing requirement, which is incorporated into the bond by 
reference, did not require IFIC to file the bond, the record supports the trial 
court’s implied finding that IFIC is not estopped from asserting Pavecon’s 
lack of timely notice of R-Com’s nonpayment as a defense to IFIC’s payment 
of Pavecon’s claims. See Dow Chem. Co., 46 S.W.3d at 242. Accordingly, 
we hold that the trial court’s judgment for IFIC is proper. We overrule 
Pavecon’s issues and affirm the trial court’s judgment.
  
    
                                                                  JOHN 
CAYCE
                                                                  CHIEF 
JUSTICE
 
  
PANEL A:   CAYCE, 
C.J.; LIVINGSTON and MCCOY, JJ.
 
DELIVERED: February 17, 2005


NOTES
1.  
R-Com, Inc., another of the defendants below, is also listed on the notice of 
appeal, but Pavecon does not raise any appellate complaints concerning R-Com.
2.  
The record shows that these services and materials were for the installation of 
manholes.
3.  
The penal sum, which is the face amount of the bond, is the maximum amount the 
surety can be required to pay in the event of a default by the principal.  Great 
Am. Ins. Co. v. N. Austin Mun. Util. Dist. No. 1, 908 S.W.2d 415, 426-27 
(Tex. 1995); Laughlin Envtl., Inc. v. Premier Towers, L.P., 126 S.W.3d 
668, 676 (Tex. App.—Houston [14th Dist.] 2004, no pet.).
4.  
We are unpersuaded by Pavecon’s argument that contract principles should not 
apply to nonstatutory bonds because the purpose of such bonds is to protect 
unpaid claimaints.
5.  
Subchapter C contains the requirements for perfecting a lien for materials and 
services by affidavit.  Id. § 53.051 (Vernon 1995), §§ 
53.052-.058 (Vernon Supp. 2004-05).  Subchapter K contains additional 
requirements for perfecting a lien on a residential construction project.  Id. 
§§ 53.251-.260.
6.  
See id. §§ 53.201-.202 (allowing original contractor to furnish owner a 
statutory bond for the benefit of claimants and setting out the requirements 
therefor).
7.  
Section 53.056(b) provides, in pertinent part: “The claimant must give 
[written notice of the unpaid balance] to the owner or reputed owner . . . not 
later than the 15th day of the third month in which all or part of the 
claimant’s labor was performed or material . . . was delivered.”  Id. 
§ 53.056(b).
8.  
See Act of May 26, 1983, 68th Leg., R.S., ch. 576, § 53.206, 1983 Tex. 
Gen. Laws 3475, 3552 (emphasis supplied).
9.  
See Act of May 21, 1999, 76th Leg., R.S., ch. 889, § 6, 1999 Tex. Gen. 
Laws 3586, 3587; see also Tex. 
Prop. Code Ann. § 53.206 historicalnote (Vernon Supp. 2004-05).
10.  
Subchapter C consists of sections 53.052-.058; subchapter K, which consists of 
sections 53.251-.260, does not precede section 53.201 numerically.
11.  
See id. § 53.201(a).  As we have discussed, claimants are protected 
only if they comply with sections 53.205-.206, which Pavecon did not.