

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-15-00090-CV

ARLINGTON SURGICARE
PARTNERS, LTD. D/B/A BAYLOR
SURGICARE AT ARLINGTON;
JONATHAN BOND; CAROLYN
EXLEY; BRETT BRODNAX;
ARLINGTON ORTHOPEDIC AND
SPINE HOSPITAL, LLC D/B/A
BAYLOR ORTHOPEDIC AND
SPINE HOSPITAL AT ARLINGTON,
LTD.; BAYLOR HEALTH
SERVICES; USP TEXAS, L.P.; USP
NORTH TEXAS, INC.; UNITED
SURGICAL PARTNERS
INTERNATIONAL, INC.; TEXAS
HEALTH VENTURES GROUP, LLC;
THVG ARLINGTON GP, LLC; AND
TEXAS HEALTH VENTURE
ARLINGTON HOSPITAL, LLC

APPELLANTS

V.

CFLS INVESTMENTS, LLC; JOE T.
SOUTHERLAND, DPM; RICHARD
ALAN CARTER, DO; JANIS R.
CORNWELL, MD; LINNIE V.
RABJOHN, DPM; JOHN R.
LANDRY, DPM; FROESCHKE
INVESTMENTS, LTD.; ZOEZY 1
SUPERSTAR GP, LLC; THE
WALKER GROUP, LP; WONG

APPELLEES

FAMILY HOLDINGS, LLC;
FALLOPIAN DISASTER
HOLDINGS, LP; MATLOCK OB-
GYN ASSOCIATES, PA; AND
DAVID B. GRAYBILL, DO

----------

FROM THE 352ND DISTRICT COURT OF TARRANT COUNTY
TRIAL COURT NO. 352-264845-13

----------

## MEMORANDUM OPINION[1]

----------

### I. INTRODUCTION

This is a permissive appeal. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(d) (West 2015); Tex. R. App. P. 28.3. We granted Appellants' petition to appeal, limiting this permissive appeal to deciding "the issue of the General Partner's ability to consent to the Doctor Defendants' investment in the [Baylor Orthopedic and Spine Hospital at Arlington] BOSHA under the first sentence of Section 12.1 of the Partnership Agreement [that] presents a controlling question of law as to which there is a substantial ground for difference of opinion." Because we hold as a matter of law that the first sentence of Section 12.01 of the Second Amended and Restated Agreement of Limited Partnership (Agreement) dated July 1, 2007, authorized the General Partner to give written consent to the

---

[1]*See* Tex. R. App. P. 47.4.

Doctor Defendants to invest in BOSHA, we will reverse the trial court's March 17, 2015 amended order denying Appellants' summary judgment to the limited extent that paragraph number 3 of the judgment denies Appellants' motion for summary judgment on grounds that are based on Section 12.01 and will remand for further proceedings consistent with this opinion.

## II. PROCEDURAL BACKGROUND

Appellants are BOSHA, Arlington Surgical Center, and various doctors and entities that are limited partners of Arlington Surgical Center and that subsequently invested in BOSHA. Appellees are limited partners of Arlington Surgical Center that did not invest in BOSHA. Appellees sued Appellants in part for allegedly violating the Agreement by investing in BOSHA. Appellants filed summary judgment motions asserting, in part, that their investment in BOSHA did not violate the Agreement because they had obtained the General Partner's written consent to acquire an ownership interest in BOSHA per Section 12.1 of the Agreement. The trial court ruled that "while the [Agreement] gives the General Partner 'sole and absolute discretion' to withhold consent, the [Agreement] is silent as to the standard which should apply to the giving of consent," and therefore the trial court denied "[Appellants'] summary judgment grounds that are based on the first sentence of Section 12.1 for this reason."

3

## III. SECTION 12.1 OF THE AGREEMENT

Section 12.1 of the Agreement provides, in pertinent part,

> 12.1 Offer of Participation. Each Limited Partner (other than the General Partner as to any Limited Partner Units it may own) agrees that . . . neither the Limited Partner nor any of its Affiliates shall, directly or indirectly, ***without the prior written consent of the General Partner, which consent may be withheld in its sole and absolute discretion***, acquire an ownership interest in or participate in the management of any (i) ambulatory surgery center or other licensed health care facility at which ambulatory surgery is performed, or (ii) short stay hospital which is identified by patient stays of three days or less located within fifteen (15) miles of the Center for so long as the Limited Partner is a Limited Partner and for a one (1) year period following the termination of such Limited Partner's status as Partner . . . . [Emphasis added.]

## IV. STANDARD OF REVIEW

When construing contracts and other written instruments, our primary concern is to ascertain the true intent of the parties as expressed in the instrument. *See NP Anderson Cotton Exch., L.P. v. Potter*, 230 S.W.3d 457, 463 (Tex. App.—Fort Worth 2007, no pet.). Language used by parties in a contract should be accorded its plain, grammatical meaning unless it definitely appears that the parties' intention would thereby be defeated. *Reilly v. Rangers Mgmt., Inc.*, 727 S.W.2d 527, 529 (Tex. 1987); *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). A contract cannot be interpreted in a way that renders any words or phrases meaningless or in a way that leads to an absurd result. *Seagull Energy E & P, Inc. v. Eland Energy, Inc.*, 207 S.W.3d 342, 345 (Tex. 2006); *Pavecon, Inc. v. R-Com, Inc.*, 159 S.W.3d 219, 222 (Tex. App.—Fort Worth 2005, no pet.). All of the contractual provisions must be considered with reference to the whole

4

instrument. *Coker*, 650 S.W.2d at 393. If, after the pertinent rules of construction are applied, the contract can be given a definite or certain legal meaning, it is unambiguous, and we construe it as a matter of law. *Frost Nat'l Bank v. L & F Distrib., Ltd.*, 165 S.W.3d 310, 312 (Tex. 2005); *Fort Worth Transp. Auth. v. Thomas*, 303 S.W.3d 850, 857–58 (Tex. App.—Fort Worth 2009, pet. denied). The construction of an unambiguous contract is a question of law for the court, which is considered under a de novo standard of review. *See Tawes v. Barnes*, 340 S.W.3d 419, 425 (Tex. 2011).

## V. APPLICATION OF THE LAW TO THE FACTS

Appellants' sole issue in its petition for permission to appeal is whether Section 12.1 of the Agreement permitted the General Partner to consent to the Doctor Defendants' investment in BOSHA.[2] On full briefing on appeal and during oral argument, Appellees agreed that the General Partner has authority to grant consent under Section 12.1.[3] Appellants and Appellees agree that Section 12.1's which-consent-may-be-withheld-in-its-sole-and-absolute-discretion provision would be meaningless if the General Partner possesses no authority to consent.

---

[2]We denied Appellees' petition for permissive appeal; to the extent Appellees' arguments relate to the issues we declined permission to appeal, we do not consider them in this limited permissive appeal.

[3]Appellees assert,

> [W]e do not say that the GP can <u>never</u> grant consent to the opening of a competing facility. Rather, we say that it does not have "sole and absolute discretion" to grant such consent. Under some circumstances, the GP might be able to consent to the opening of a competing facility without violating the Partnership Agreement.

5

We likewise agree; the General Partner's contractual right to withhold consent is no right at all absent the authority to consent. *Cf. Seagull Energy E & P, Inc.*, 207 S.W.3d at 345 (recognizing that a contract cannot be interpreted in a way that renders any words or phrases meaningless).

We next turn to the issue of Section 12.1's "silen[ce] as to the standard which should apply to the giving of consent." The first sentence of Section 12.1 gives the General Partner the right to consent to the acquisition by limited partners of ownership interests in ambulatory surgery centers, other licensed health care facilities at which ambulatory surgery is performed, and short stay hospitals—identified by patient stays of three days or less—that are located within fifteen miles of Arlington Surgicenter. Section 12.1 prohibits a limited partner's acquisition of such an ownership interest only if it is made "without the prior written consent of the General Partner." The provision states that the written consent "may be withheld [by the General Partner] in its sole and absolute discretion."

Given its ordinary meaning, the noun "consent" means acceptance or approval of what is planned or done by another, acquiescence;[4] in construing Section 12.1 of the Agreement according to its plain meaning, we refrain from superimposing standards for, or degrees of, consent that would modify the word's plain meaning. *See Limestone Grp., Inc. v. Sai Thong, L.L.C.*, 107

---

[4]*See, e.g.*, *Consent*, American Heritage College Dictionary (5th ed. 2015).

S.W.3d 793, 797 (Tex. App.—Amarillo 2003, no pet.) (declining to construe the word "default" as including quantifications or measurements such as "substantial" or "material" when the parties' agreement merely used the word "default"); *Cross Timbers Oil Co. v. Exxon Corp.*, 22 S.W.3d 24, 26 (Tex. App.—Amarillo 2000, no pet.) (explaining that appellate court "cannot change the contract merely because we or one of the parties comes to dislike its provisions or thinks that something else is needed in it").

We have reviewed the entire Agreement. Considering Section 12.1 in connection with the entire Agreement and harmonizing it with the other provisions of the Agreement, the construction of Section 12.1 according to its plain meaning as set forth above is consistent with the Agreement.[5] *See, e.g.*, *Coker*, 650 S.W.2d at 393.

Thus, applying a de novo standard, giving Section 12.1 its plain meaning, interpreting it so as to not render any words meaningless, and considering it with reference to the whole Agreement, we hold that as a matter of law the General

---

[5]Appellees cite Sections 10.5 and 18.2 of the Agreement as limiting the General Partner's right to consent under Section 12.1. No conflict or disharmony is generated between these two Sections and Section 12.1 by giving the term consent its plain meaning in Section 12.1. Moreover, because Section 12.1 is more narrow than Sections 10.5 and 18.2, even if a conflict existed between these sections, we would simply harmonize the provisions by treating Section 12.1 as a specific exception to the more general provisions set forth in Sections 10.5 and 18.2. *See, e.g.*, *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133–34 (Tex. 1994) (applying rule of construction to contract); *see also Jackson v. State Office of Admin. Hearings*, 351 S.W.3d 290, 297 (Tex. 2011) (applying rule of construction to statute).

Partner possessed authority to give written consent to the Doctor Defendants' investments in BOSHA. *See, e.g.*, *Tawes*, 340 S.W.3d at 425; *Seagull Energy E & P, Inc.*, 207 S.W.3d at 345; *Frost Nat'l Bank*, 165 S.W.3d at 312; *Reilly*, 727 S.W.2d at 529; *Coker,* 650 S.W.2d at 393. We hold that the trial court erred to the extent it construed Section 12.1's "silen[ce] as to the standard which should apply to the giving of consent" as limiting the General Partner's ability to grant written consent. *See Limestone Grp., Inc.*, 107 S.W.3d at 797 ("In short, the parties omitted words from the contract modifying the degree of default needed. Because they did, we may not now incorporate them into the agreement and thereby change it."). We sustain Appellants' sole issue.

## VI. CONCLUSION

Having sustained Appellants' sole issue and determined as a matter of law that the first sentence of Section 12.01 of the Second Amended and Restated Agreement of Limited Partnership dated July 1, 2007, authorized the General Partner to give written consent to the Doctor Defendants to invest in BOSHA, we reverse the trial court's March 17, 2015 order denying Appellants' summary judgment grounds that are based on this provision and remand for further proceedings consistent with this opinion.

/s/ Sue Walker
SUE WALKER
JUSTICE

PANEL: DAUPHINOT, WALKER, and GABRIEL, JJ.

DAUPHINOT, J., dissents without opinion.

8

DELIVERED:  October 1, 2015