Opinion to: SJR TGT SN TJ EVK ERA GCH LCH JB









Opinion Issued April 13,
2006
 













 

     

 

 

 

 

 

 

 

 

 

 

In The

Court of Appeals

For The

First District of Texas

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



NO. 01-04-01293-CV

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 

 



FONDREN CONSTRUCTION CO., INC. AND ROBERT G. LUBKEMAN,
Appellants

 

V.

 

BRIARCLIFF HOUSING DEVELOPMENT ASSOCIATES, INC.,
DPMC-BRIARCLIFF, L.P., AND JOHN DEERE COMPANY, Appellees

 

 



On Appeal from the 165th District Court  








Harris County, Texas

Trial Court Cause No. 2000-53187

 

 

 

 



O P I N I O N

          Fondren
Construction Co., Inc. and Robert Lubkeman (collectively “Fondren”) appeal from
a summary judgment rendered on behalf of appellee John Deere Company (“John
Deere”), and a motion for judgment rendered in favor of appellees Briarcliff
Housing Development Associates, Inc. (“BHDA”) and DPMC-Briarcliff, L.P.
(“DPMC”) during a bench trial.  Fondren sued
for breach of contract, unjust enrichment, foreclosure of lien interest, fraud
and fraud in the inducement, negligent misrepresentation, and a right to
recover on a payment bond, alleging it was not paid in full for construction subcontracting
work performed on the Briarcliff property.  On appeal, Fondren contends the trial court
erred in granting summary judgment in favor of John Deere because it presented
improper summary judgment evidence and the bond it relied on fails to meet the
requirements of the Texas Property Code. 
Fondren further contends the trial court erred in granting judgment in
favor of BHDA and DPMC at the close of its case because the evidence introduced
during the bench trial thus far proved Fondren’s claims.  We affirm.

BACKGROUND

          In
January 1999, Westbrook Construction contracted with BHDA to perform services
at the Briarcliff Apartments.  John
Deere, acting as surety, filed a payment bond covering the work to be performed
under the contract.  Around the same
time, Lubkeman contracted with Westbrook, subject to Westbrook’s contract with
BHDA, to perform supervisory work in an individual capacity and to perform
contracting work in his capacity as owner of Fondren Construction Company.  Westbrook paid Fondren initially.  At some point, Westbrook stopped work, and
another contractor completed the work at Briarcliff.  At the time, Westbrook owed additional
amounts to Fondren.  After Westbrook
stopped work, Fondren alleges BHDA and DPMC promised full payment of the
amounts due under the contracts with Westbrook. 
Fondren further contends this promise encouraged it to continue work on
the property for BHDA and DPMC.  

In February 2000, Lubkeman filed
liens against the Briarcliff property on behalf of himself and Fondren.  Lubkeman testified that none of the work he
performed for which he demands payment occurred after he filed the liens.  In October 2000, Lubkeman sued BHDA and
Westbrook.  In August 2003, he amended
the petition, removing Westbrook as a party to the suit, adding DPMC and John
Deere as parties, and adding a cause of action on the payment bond.[1]  John Deere moved for summary judgment, which
the trial court granted.  The case
proceeded to a bench trial.  After
Fondren rested, BHDA and DPMC moved for judgment, which the trial court also
granted.  Fondren appeals from both
decisions.

THE PAYMENT BOND

          Fondren
contends that the payment bond is not a valid defense to either John Deere’s
motion for summary judgment or DPMC and BHDA’s motion for judgment because the
bond fails to comply with the requirements of the Property Code.  Because the validity of the payment bond
affects the merit of Fondren’s claims against all of the appellees in this
case, we address Fondren’s attacks as to the bond first.  See Tex.
Prop. Code Ann. § 53.201 (Vernon Supp. 2005) (“if a valid bond
is filed, a claimant may not file suit against the owner or the owner’s
property”); see also Laughlin Envtl., Inc. v. Premier Towers, L.P., 126
S.W.3d 668, 675 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (explaining how
compliance with statutory bond requirements affects underlying lien claims).

          First,
Fondren argues John Deere’s bond does not prominently display contact information
as Texas Property Code section 53.202(6) requires.  See Tex
Prop. Code Ann. § 53.202(6) (Vernon Supp. 2005).  John Deere issued the bond in this case in
January 1999.  The Legislature added subsection
6 to the statute in May 2001, and it did not take effect until September 1,
2001.  See Act of May 15, 2001, 77th
Leg., R.S., ch. 380, § 5, 7, 2001 Tex. Gen. Laws 706, 707–08 (amended nonsubstantively
2005) (current version at Tex. Prop.
Code Ann. § 53.202(6) (Vernon Supp. 2005)).  The statutory contact information
requirements did not exist when John Deere filed the bond; thus, no fact issue exists
regarding John Deere’s compliance with subsection 6.

Second, Fondren relies on section
53.202(1) of the Property Code, which requires that the penal sum of the bond
be at least equal to the original contract amount.  See Tex.
Prop. Code Ann. § 53.202(1).  Because the penal sum sets the financial
limits of the surety’s obligations, it is the most material aspect of a payment
bond.  Laughlin, 126 S.W.3d at 674
(citing Sherwin-Williams Co. v. Am. Indem. Co., 504 S.W.2d 400, 402
(Tex. 1973)).  Here, Fondren sued John
Deere on a payment bond it executed on January 11, 1999.  The bond covers the contract entered into
between Westbrook and Briarcliff on January 12, 1999.  The original amount of the contract between
Westbrook and Briarcliff is $4,224,485.00, and the amount of the payment bond issued
by John Deere is $4,224,485.00—exactly equal to the amount of the contract.  The contract and the bond are evidence that the
bond is in a penal sum equal to the total of the original contract, and Fondren
did not offer any controverting evidence. 
Thus, no fact issue exists regarding compliance with subsection 1 of the
statute.  We hold that the payment bond
complied with the Property Code’s requirement with respect to section
53.202(1).

SUMMARY JUDGMENT

As its sole ground for summary
judgment, John Deere contends that Fondren cannot recover on the valid payment
bond because Fondren failed to bring suit within the one year allowed by the
Property Code.  See Tex. Prop. Code Ann. § 53.208 (Vernon 1995) (setting time limit for suit on
bond).  Fondren responds that the
affidavit testimony of David Styers, a vice president for John Deere, is
improper summary judgment evidence, and that the bond does not cover the work
at issue in this case.  Fondren re-urges
these arguments on appeal.

A. 
Standard of Review

We review the trial court’s ruling on
a summary judgment motion de novo.  See
Provident Life & Accident Ins. Co. v. Knott, 128 S.W.3d 211, 215 (Tex.
2003).  We view the evidence in the light
most favorable to the non-movant, making all reasonable inferences and
resolving all doubts in the non-movant’s favor. 
Sw. Elec. Power Co. v. Grant, 73 S.W.3d 211, 215 (Tex. 2002).  The movant for a traditional summary judgment
has the burden of showing that there is no genuine issue of material fact and
that it is entitled to judgment as a matter of law.  Tex.
R. Civ. P. 166a(c); Haase v.
Glazner, 62 S.W.3d 795, 797 (Tex. 2001). 
A defendant seeking summary judgment
must negate as a matter of law at least one element of each of the plaintiff’s
theories of recovery or plead and prove as a matter of law each element of an
affirmative defense.  Johnson County
Sheriff's Posse v. Endsley, 926 S.W.2d 284, 285 (Tex. 1996).  If the movant can show it is entitled to
judgment as a matter of law, the burden shifts to the non-movant to present
evidence raising a fact issue to defeat the motion for summary judgment.  Flores v. N. Am. Techs. Group, Inc.,
176 S.W.3d 442, 446 (Tex. App.—Houston [1st Dist.] 2004, pet. denied).

B. 
Affidavit of Interested Party

          Fondren
contends Styers’s affidavit is improper summary judgment evidence because
Styers is an interested witness, and his affidavit contains conclusory
statements.  A trial court may grant summary
judgment based on the uncontroverted testimony of an interested witness if the
testimony is “clear, positive and direct, otherwise credible and free from
contradictions and inconsistencies, and could have been readily
controverted.”  Tex. R. Civ. P. 166a(c). 


Styers avers in the affidavit that he
is the vice president of the company formerly known as John Deere, and is the
custodian of the records pertaining to this case.  He further avers that the payment bond and
contract offered as summary judgment evidence are true and correct copies of
the bond and contract in issue in this case. 
Fondren offered no argument or summary judgment evidence to suggest this
testimony is not clear, positive, direct, free from contradictions, and readily
controvertible.  See Casso v.
Brand, 776 S.W.2d 551, 558 (Tex. 1989) (“could have been readily controverted” means “testimony at
issue can by its nature be effectively countered by opposing evidence”); Larson
v. Family Violence & Sexual Assault Prevention Ctr. of S. Tex., 64 S.W.3d 506, 513
(Tex.
App.—Corpus Christi 2001, pet. denied) (holding affidavit attesting to authenticity
of letter was proper summary judgment evidence).  If Fondren had evidence to contradict Styers’s
claims regarding his position at John Deere, or the accuracy of the bond and
contract, then our summary judgment rules place the burden on Fondren to come
forth with such evidence once John Deere moved for a summary judgment.  Furthermore, Fondren fails to demonstrate how
any of the factual statements made in Styers’s affidavit are conclusory.  We thus hold that Fondren fails to raise a
fact issue with regard to Styers’s affidavit.

B. 
Failure to Bring Suit Within the Limitations Period

John Deere contends Fondren’s suit
against it is barred by the existence of a valid payment bond and its
corresponding statute of limitations.  An
original contractor who has a written contract with the owner may furnish a
bond for the benefit of claimants, such as subcontractors who are not paid for
their work.  Tex. Prop. Code Ann. § 53.201(a).  The bond protects
anyone with a claim perfected in a manner prescribed for fixing a lien under
subchapter C of the Code.  See Act
of May 24, 1983, 68th Leg., R.S., ch. 576, § 1, 1983 Tex. Gen. Laws 3475, 3552
(amended 1999) (current version at Tex.
Prop. Code Ann. § 53.205(a)(1) (Vernon Supp. 2005)).  Section 53.052 allows a claimant to perfect a
claim by filing an affidavit with the county clerk no later than the fifteenth
day of the fourth month after the day on which the indebtedness accrues.  Tex.
Prop. Code Ann. § 53.052(a) (Vernon Supp. 2005).  Indebtedness to a subcontractor accrues on
the last day of the last month in which the labor was performed or material
furnished.  Id. § 53.053(c).  A claimant may sue the surety on a bond “if
his claim remains unpaid for 60 days after the claimant perfects the
claim.”  Tex. Prop. Code Ann. § 53.208(a) (Vernon 1995).  “If the bond is recorded at the time the lien
is filed, the claimant must sue on the bond within one year following
perfection of his claim.”  Id. §
53.208(d).      

          Here,
Fondren failed to sue on the bond within the statutorily allowed period.  Fondren alleges that the work performed at
Briarcliff ended in December 1999, and thus the indebtedness accrued on
December 31, 1999.  See Tex. Prop. Code Ann. § 53.053(c)
(Vernon Supp. 2005).  Fondren perfected
its claim by filing affidavits with the county clerk on February 24, 2000,
within the time allowed for perfection under the statute.  See id. § 53.052(a).  John
Deere recorded its bond on January 13, 1999; thus, Fondren had one year from
February 24, 2000 to file suit on the bond. 
Tex. Prop. Code Ann. § 53.208(d)
(Vernon 1995).  Fondren did not sue on
the bond, or add John Deere as a party to the suit, until August 18, 2003, well
after the time limit.  We therefore hold
that the suit against John Deere is barred by the statute of limitations.  Compare Sherwin-Williams, 504 S.W.2d
at 401 (joinder of surety after time limit set by statute would have been untimely
if statute applied), with Mathews Constr. Co. v. Jasper Hous. Constr. Co.,
528 S.W.2d 323, 328 (Tex. Civ. App.—Beaumont 1975, writ ref’d n.r.e.) (where
amended complaint filed after limitations period added action on bond, but
surety had been named in original pleading filed within limitations period,
suit on bond was timely).  

Fondren argues that appellees
conspired to withhold the existence of the bond despite his repeated request
that they produce it.  However, the bond
was on file in the county records beginning January 13, 1999, before Fondren
filed its liens.  “An instrument that is
properly recorded in the proper county is notice to all persons of the
existence of the instrument.”  See Act
of May 24, 1983, 68th Leg., R.S., ch. 576, § 1, 1983 Tex. Gen. Laws 3475, 3495–96
(amended 2003) (current version at Tex.
Prop. Code Ann. § 13.002 (Vernon 2004)). 
Thus, the appellees’ failure to produce the bond when requested does not
affect the applicability of the bond to this case.  Fondren’s failure to add John Deere as a party
within one year of perfecting its claim bars its suit against John Deere.

C. 
Applicability of Bond to This Case

          Fondren’s
final argument against summary judgment is that a fact issue remains concerning
whether the bond attached to John Deere’s motion for summary judgment applies
to Fondren’s claims in this case.  In its
fourth amended petition, Fondren added John Deere as a defendant, and added a
cause of action entitled “Suit on Bond.” 
Fondren asserts that “[r]ecently Lubkeman learned that John Deere provided
a bond for the subject property. . . .  Fondren and Lubkeman therefore bring this suit
against John Deere and seek payment as required under the terms of the
bond.”  

The bond covers work done pursuant to
a January 12, 1999 contract between Westbrook and Briarcliff.  Fondren claims the work for which it was not
paid began during 1998, and therefore the burden is on John Deere to
demonstrate the applicability of the bond to this case.  First, though Fondren asserted, both in its
petition and at oral argument, that the work for which it demands payment began
in 1998, it failed to present any summary judgment evidence to that effect.  The only contract in the record for work to
be performed by Fondren for Westbrook is a contract dated January 13, 1999, which
is made subject to the contract between Westbrook and Briarcliff entered into
on January 12, 1999, for which John Deere filed a bond.  There is no evidence to suggest that Fondren
performed any work for Briarcliff prior to 1999.  Even if the bond did not cover the work for
which Fondren is demanding payment, then Fondren could not recover on the bond,
and John Deere would not be a proper party to this suit because John Deere
would not be a party to any contracts for work performed by Fondren before the
date of the bond.  Fondren did not sue
John Deere for anything other than the bond for which John Deere is the
surety.  We therefore hold this argument fails
to raise a fact issue as to Fondren’s claim for payment against John Deere.

Accordingly, we hold the trial court
did not err in granting summary judgment in favor of John Deere.

MOTION FOR JUDGMENT

          At
the close of Fondren’s case, BHDA and DPMC moved for a “directed verdict” on the
grounds that Fondren’s suit is barred by the Property Code because a valid bond
was on file for the work at issue, no evidence established any of the alleged
misrepresentations were made by either defendant, and no evidence established
intent to commit fraud.  The trial court
granted the motion.

A. 
Standard of Review

          We
construe BHDA and DPMC’s motion as a motion for judgment rather than a directed
verdict, because they brought it after the plaintiffs
rested in a bench trial.  See Qantel Bus. Sys., Inc. v. Custom
Controls Co., 761 S.W.2d 302, 303 (Tex. 1988); Ashcreek Homeowner’s Ass’n,
Inc. v. Smith, 902 S.W.2d 586, 587 n.1 (Tex. App.—Houston [1st Dist.] 1995,
no writ).  As the arbiter of factual and
legal issues, the judge in a nonjury trial has the authority to rule on both
the legal and factual sufficiency of the plaintiff’s evidence on the defendant’s
motion for judgment,
after hearing only the plaintiff’s evidence.  Qantel, 761 S.W.2d at 304.  On appeal, the legal and factual sufficiency
of the evidence to support the judgment can be challenged as in any other
nonjury case.  Ashcreek, 902
S.W.2d at 587.  When we review legal
sufficiency, we review the evidence in a light that tends to support the
finding of the disputed facts and disregard all evidence and inferences to the
contrary.  Lee Lewis Constr., Inc. v.
Harrison, 70 S.W.3d 778, 782 (Tex. 2001). 
When we review factual sufficiency, we conduct a neutral review of all
the evidence.  Cain v. Bain, 709
S.W.2d 175, 176 (Tex. 1986).  We reverse
for factual insufficiency only if the ruling is so against the great weight and
preponderance of the evidence as to be manifestly erroneous or unjust. Minucci
v. Sogevalor, S.A., 14 S.W.3d 790, 794 (Tex. App.—Houston [1st Dist.] 2000,
no pet.).

B. 
Effect of Bond on Fondren’s Claims

As owners of the property on which
the work at issue was performed, BHDA and DPMC contend the existence of a valid
payment bond covering the work in question bars Fondren’s claims against
them.  If a payment bond meets statutory
requirements, a claimant may not file lien claims against a property owner or
seek foreclosure of the lien on the owner’s property.  See Tex.
Prop. Code Ann. § 53.201(b)
(Vernon Supp. 2005) (“if a valid bond is filed, a claimant may not file suit
against the owner or the owner’s property”); Laughlin, 126 S.W.3d at 671.
 “A payment bond,
executed by an original contractor, is substituted for whatever other relief
might be obtained by subcontractors and those furnishing materials and labor
against the owner and his property.”
 Sentry Ins. Co. v. Radcliff Materials
of Tex., Inc., 687 S.W.2d 437, 440 (Tex. App.—Houston [14th Dist.] 1985, no
writ) (citing Fid. & Deposit Co. of Md. v. Felker, 469 S.W.2d 389
(Tex. 1971)).  

The bond in this case satisfies the
requirements of the statute.  The bond
was recorded in January 1999 pursuant to a contract between Westbrook, the
general contractor, and BHDA, the property owner.  Lubkeman testified that the BHDA project came
up in 1999, that he entered into contracts with Westbrook to do work at BHDA’s
property, and that all the work for which he claims he was not paid was
performed prior to the filing of the liens in Februrary 2000.  He further testified that he “imagined” the
bond in this case covers the work he performed on BHDA’s property.  See Tex.
Prop. Code Ann. § 53.201(b).  Though Fondren claims the bond was kept a
secret, it had been recorded in the public records before Fondren filed its
lien on the property—thus, Fondren had constructive notice of its existence.  Under the Property Code, the bond substituted
for any other relief Fondren might seek against the property owners.  Id. 
Accordingly, we hold that the trial court did not err in finding that the
bond barred Fondren’s claims against the property owners BHDA and DPMC.

In addition, the trial court properly
entered judgment for BHDA and DPMC because Fondren failed to establish its
negligent misrepresentation, fraud, and unjust enrichment claims against them.  Lubkeman testified that Larry Hill, the owner
of Westbrook, asked Fondren to continue work on the Briarcliff project despite Westbrook’s
problems.  Lubkeman testified that after
Westbrook left the job, he continued working for HRI, a DPMC-related entity.  He testified that after HRI left, Davis Penn,
the president of DPMC, told Fondren and some other subcontractors that “all
bills would be paid” if they continued to work at Briarcliff.  Lubkeman testified that he would not have
continued working if he had not been given such assurances.  Lubkeman, however, admitted that Fondren
received full payment from DPMC and BHDA for the work he performed after
Westbrook’s departure, including while working for HRI.  Fondren’s contention is that Penn’s assurance
amounted to a promise to pay amounts Westbrook owed to it, and that it would not
have continued working on the Briarcliff project if not for such assurances.

A person commits fraud by (1) making
a false, material misrepresentation (2) that the person either knows to be
false or asserts recklessly without knowledge of its truth (3) with the intent
that the misrepresentation be acted upon, (4) and the person to whom the
misrepresentation is made acts in reliance upon it (5) and is injured as a
result.  Formosa Plastics Corp. USA v.
Presidio Eng'rs & Contractors, Inc., 960 S.W.2d 41, 47–48 (Tex. 1998).  Here, Fondren’s trial theory was that Penn’s
statement that “all bills would be paid” constituted a material
misrepresentation that DPMC would pay Fondren’s bills owed by Westbrook in
connection with the Briarcliff property. 
We hold the trial court reasonably could have concluded that Property
Code section 53.201(b) precludes any suit for fraud against BHDA and DPMC based
on testimony at trial, because Lubkeman admitted that the work he performed was
covered by the bond.  If the fraud allegation
seeks recovery for amounts owed for work performed that is covered by the bond,
then the bond is Fondren’s exclusive remedy. 
See Tex. Prop. Code Ann. §
53.201(b).  Moreover, BHDA and DPMC paid
all monies they owed to Fondren.  It is
undisputed that Fondren’s unpaid balance was pursuant to a contract with
Westbrook; thus, any damages Fondren incurred happened before Hill’s alleged
assurances.  Therefore, the trial court
reasonably could have concluded that Hill’s representation referred to amounts
owed by the defendants, not Westbrook, and could not be a proximate cause of
the damages Fondren had already incurred as a result of Westbrook’s failure to
pay on its contract with Fondren.

The elements
of a negligent misrepresentation claim are: (1) the
defendant made a representation in the course of its business, or in a
transaction in which it had a pecuniary interest; (2) the defendant supplied
false information for the guidance of others in their business; (3) the
defendant did not exercise reasonable care or competence in obtaining or
communicating the information; and (4) the plaintiff suffered pecuniary loss by
justifiably relying on the representation. 
Roof Sys., Inc. v. Johns Manville Corp., 130 S.W.3d 430, 438
(Tex. App.—Houston [14th Dist.] 2004, no pet.) (citing Fed. Land Bank Ass’n
v. Sloane, 825 S.W.2d 439, 442 (Tex. 1991)).  As with Fondren’s fraud claim, after hearing
Fondren’s evidence at trial, the trial court reasonably could have concluded
that no representation by DPMC was false or caused any losses to Fondren.  DPMC paid Fondren all the money it owed for
work done on behalf of DPMC and on behalf of its related entity, HRI.  We therefore hold that the trial court did
not err in granting judgment against Fondren on its negligent misrepresentation
claim.

Recovery under a claim of unjust
enrichment requires a plaintiff to prove that the defendant benefited from him
through fraud, duress, or the taking of undue advantage.  Haldenfels Bros., Inc. v. City of Corpus
Christi, 832 S.W.2d 39, 41 (Tex. 1992). 
Here, DPMC paid Fondren in full for the work it performed for DPMC, and
Fondren presents no evidence that DPMC was unjustly enriched by work Fondren
performed pursuant to its contract with Westbrook.  Thus, the trial court did not err in granting
judgment against Fondren on its unjust enrichment claim.

Accordingly, we hold the trial court
did not err in entering judgment against Fondren on its claims against BHDA and
DPMC.

CONCLUSION

The trial court properly granted
summary judgment in favor of John Deere because Fondren filed suit on the
payment bond against John Deere outside the limitations period set forth in the
Property Code.  The trial court properly
entered judgment in favor of BHDA and DPMC because the evidence presented by
Fondren at the bench trial supports the existence of a valid payment bond
covering the work Fondren performed, and thus the Property Code precludes a
suit against the property or the property owner.  Moreover, the trial court reasonably could
have concluded that Fondren’s evidence at trial failed to prove at least one
element of each of its causes of action. 
We affirm the judgment of the trial court.

          

 

                                                          Jane
Bland

                                                          Justice

 

Panel consists of Justices Taft,
Higley, and Bland.

 











[1] The record contains an original petition filed in
February 2002, asserting the same causes of action against BHDA, but with a
different cause number.  There is no
indication, either in the record or in the briefs, as to any disposition
relating to that cause number.  The
fourth amended petition, along with the orders, judgments, and notice of
appeal, all bear the 2000 cause number.