02-10-336-CV









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

NO. 02-10-00336-CV

 

 


 
 
 Ricky J. Pickle, Individually, and d/b/a RJ Pickle
 & Associates, CPA’s
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 Traci D. Johnson
 
 
  
 
 
 APPELLEE
 
 


 

 

----------

FROM THE 67th
District Court OF Tarrant COUNTY

----------

MEMORANDUM
OPINION[1]

----------

I.  Introduction

Appellant
Ricky J. Pickle, individually, and d/b/a RJ Pickle & Associates, CPA’s,
appeals the trial court’s grant of Appellee Traci D. Johnson’s motion for summary
judgment.  In four issues, Pickle contends that the trial court erred by
finding that the parties’ non-solicitation agreement contained a five-year
limitation;[2] that the trial court
erred by refusing to allow him to file a second amended petition; that the
trial court did not dispose of all issues in its judgment; and that the trial
court erred by awarding attorneys’ fees to Johnson.  We will affirm.

II.  Background

Johnson,
her father, and her uncle had a partnership in a certified public accountant
business.  Pickle purchased the business on December 23, 2002.  Following the
close of the sale, Pickle employed Johnson.  Johnson remained an employee of
Pickle until the fall of 2007, when she resigned.  Sometime after she resigned,
Johnson began competing with Pickle.  In her course of business, Johnson sent
notices to some of the accounts she formerly serviced both when she was a
partner in the original business and later when she worked for Pickle.

On
December 19, 2008, Pickle filed a breach of contract suit seeking damages and
injunctive relief.  Pickle pleaded that the agreement to purchase the original
partnership from Johnson included two separate covenants.  First, according to
Pickle’s pleadings, the contract of sale included a non-compete covenant with a
time limit of five years.  Second, Pickle pleaded that the contract of sale
contained a separate non-solicitation agreement with no time limit and that
Johnson had breached that agreement.  The language giving rise to both
arguments is found in section 1.3 of the contract of sale, which reads in its
entirety:

1.3     Covenant
Not to Compete or Solicit.  Upon the purchase of the Partnership’s
Assets covered by this Agreement and for a period ending on the fifth (5th)
anniversary of the Closing Date, the Partnership, John L. Hodgkiss, Traci D.
Johnson, and William R. Hodgkiss, jointly and severally, hereby each agree that
they will not directly or indirectly within the Texas counties of Tarrant,
Dallas, and Denton, enter into or engage generally in competition with Buyer in
the accounting, auditing, tax preparation, or other similar or related
businesses in which the Buyer is engaged on the Closing Date, either as an
individual on his/her own or as a partner or joint venturer, or as an employee
or agent for any person or entity, or as an officer, director, shareholder,
manager, member, or otherwise.  Further, the Partnership, John L. Hodgkiss,
Traci D. Johnson, and William R. Hodgkiss shall not during such five (5) year
period, directly or indirectly, copy, disclose, disseminate, divulge, communicate,
furnish, reveal, use to the detriment of Buyer or for the benefit of any other
person or persons, or misuse in any way any confidential or proprietary
information or trade secrets of the Buyer or the Assets sold hereby, including,
but not limited to, personnel information, financial information, customer
information, accounting processes and procedures, correspondence, internal
memoranda, or any other proprietary or technical information.

 

In addition, the
Partnership, John L. Hodgkiss, Traci D. Johnson, and William R. Hodgkiss,
jointly and severally each agree that they will not solicit any client or
customer listed among the Assets being sold.

 

This covenant by the
Partnership, John L. Hodgkiss, Traci D. Johnson, and William R. Hodgkiss is an
independent agreement and the existence of any claim or cause of action of the
Partnership, John L. Hodgkiss, Traci D. Johnson, or William R. Hodgkiss against
Buyer will not constitute a defense to the enforcement by Buyer of this
covenant.  Buyer, the Partnership, John L. Hodgkiss, Traci D. Johnson, and
William R. Hodgkiss hereby agree to the sum of FOUR THOUSAND AND NO/100 DOLLARS
($4,000.00) as consideration for this covenant.  However, Buyer, the
Partnership, John L. Hodgkiss, Traci D. Johnson, and William R. Hodgkiss agree
that said sum shall not be construed to be liquidated damages for breach of
said covenant and that irreparable harm will be sustained by Buyer if the
Partnership, John L. Hodgkiss, Traci D. Johnson, or William R. Hodgkiss
violates the provisions of this paragraph.  The Partnership, John L. Hodgkiss,
Traci D. Johnson, and William R. Hodgkiss therefore agree Buyer may seek
equitable as well as legal remedies against each of them if the Partnership,
John L. Hodgkiss, Traci D. Johnson, or William R. Hodgkiss breaches or attempts
to breach this covenant not to compete or solicit which may include, but not be
limited to, a temporary restraining order and temporary injunction.

 

If a court determines
that the foregoing restrictions are too broad or otherwise too restrictive
under applicable law, including with respect to time or space, the court is
hereby requested and authorized by the parties hereto to revise the foregoing
restrictions to include the maximum restrictions allowed under the applicable
law.  Sellers expressly agree that breach of the foregoing would result in
irreparable injuries to Buyer, that the remedy at law for any such breach will
be inadequate and that upon breach of these provisions, Buyer, in addition to
all other available remedies, shall be entitled as a matter of right to
injunctive relief in any court of competent jurisdiction without the necessity
of proving the actual damage to Byer [sic].

 

Notwithstanding the
above to the contrary, this covenant is not intended to prevent John L.
Hodgkiss from continuing his existing financial advisory business within its
current scope of services.

Ultimately,
Johnson filed a motion for summary judgment, contending that there are not two
separate covenants in the agreement but that rather there is one covenant not
to compete or solicit that contained a single five-year limitation agreement,
which expired December 23, 2007.  Johnson also sought attorneys’ fees.

After
a series of hearings, on May 3, 2010, the trial court found that the purchase
agreement contained one covenant limited by a single five-year period that
expired on December 23, 2007, and granted summary judgment in favor of Johnson.
 The trial court then held a hearing regarding attorneys’ fees and later
entered a final judgment, which states:  “Because the Court’s partial
summary judgments signed May 3, 2010, disposed of the balance of the claims
pending in this cause, this Order specifically disposes of all claims between
all parties in combination with earlier Orders.”  This appeal followed.

III.  Discussion

A.      Time
Limitation on Covenant Not to Compete or Solicit

In
his first issue, Pickle contends that the trial court erred by granting
Johnson’s motion for summary judgment predicated on an interpretation of
section 1.3 that it was the intent of the parties that the five-year limitation
was intended to apply to the non-solicitation portion of the covenant not to
compete or solicit.  Specifically, Pickle argues that because the five-year
limitation is in the first paragraph of section 1.3, where language pertaining
to non-competition exists, and only the second paragraph specifically mentions
a restraint upon solicitation of clients by the sellers, then the intent of the
parties is clear that they intended to treat the two paragraphs as two distinct
covenants.  According to Pickle, the first paragraph relates to competition and
the second paragraph relates to solicitation of existing clients by the seller
at the time of sale.  And, according to Pickle, the first paragraph contains a
five-year limitation and the second paragraph contains none; thus, Pickle
argues that section 1.3 was intended to be unlimited in time as it pertains to
the solicitation of Johnson’s former clients.

          Johnson
counters that portions of section 1.3 would be rendered meaningless under
Pickle’s interpretation.  Johnson also contends that the plain language of
section 1.3 unambiguously expresses that the parties intended the entire
section to be treated as one covenant, with the five-year limitation applying to
the entire section as a whole.  The trial court granted Johnson’s summary
judgment and interpreted section 1.3 as having a single five-year limitation on
competition and solicitation ending on December 23, 2007—five years after the
sale of the business to Pickle.

1.       Summary Judgment Standard of Review

          In a
summary judgment case, the issue on appeal is whether the movant met the
summary judgment burden by establishing that no genuine issue of material fact
exists and that the movant is entitled to judgment as a matter of law.  Tex. R.
Civ. P. 166a(c); Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding,
289 S.W.3d 844, 848 (Tex. 2009).  We review a summary judgment de novo.  Travelers
Ins. Co. v. Joachim, 315 S.W.3d 860, 862 (Tex. 2010).

          We
take as true all evidence favorable to the nonmovant, and we indulge every
reasonable inference and resolve any doubts in the nonmovant’s favor.  20801,
Inc. v. Parker, 249 S.W.3d 392, 399 (Tex. 2008); Provident Life &
Accident Ins. Co. v. Knott, 128 S.W.3d 211, 215 (Tex. 2003).  We consider
the evidence presented in the light most favorable to the nonmovant, crediting
evidence favorable to the nonmovant if reasonable jurors could and disregarding
evidence contrary to the nonmovant unless reasonable jurors could not.  Mann
Frankfort, 289 S.W.3d at 848.  We must consider whether reasonable and
fair-minded jurors could differ in their conclusions in light of all of the
evidence presented.  See Wal-Mart Stores, Inc. v. Spates, 186 S.W.3d
566, 568 (Tex. 2006); City of Keller v. Wilson, 168 S.W.3d 802, 822–24
(Tex. 2005).

If
uncontroverted evidence is from an interested witness, it does nothing more
than raise a fact issue unless it is clear, positive and direct, otherwise
credible and free from contradictions and inconsistencies, and could have been
readily controverted.  Tex. R. Civ. P. 166a(c); Morrison v. Christie,
266 S.W.3d 89, 92 (Tex. App.—Fort Worth 2008, no pet.).

A
defendant who conclusively negates at least one essential element of a cause of
action is entitled to summary judgment on that claim.  Frost Nat’l Bank v.
Fernandez, 315 S.W.3d 494, 508 (Tex. 2010), cert. denied, 131
S. Ct. 1017 (2011).  Once the defendant produces sufficient evidence to
establish the right to summary judgment, the burden shifts to the plaintiff to
come forward with competent controverting evidence that raises a fact issue.  Van
v. Pena, 990 S.W.2d 751, 753 (Tex. 1999).

2.       Contract Interpretation

When
interpreting a contract, we must ascertain and give effect to the contracting
parties’ intent.  Perry Homes v. Cull, 258 S.W.3d 580, 606 (Tex. 2008)
(O’Neill, J., concurring), cert. denied, 120 S. Ct. 952 (2009).  We
focus on the language used in the contract because it is the best indication of
the parties’ intent.  Id.  We must examine the entire contract in an
effort to harmonize and effectuate all of its provisions so that none are
rendered meaningless.  Seagull Energy E & P, Inc. v. Eland Energy, Inc.,
207 S.W.3d 342, 345 (Tex. 2006).  Therefore, we will not give controlling
effect to any single provision; instead, we read all of the provisions in light
of the entire agreement.  Id.  (citing Coker v. Coker, 650 S.W.2d
391, 393 (Tex. 1983)).  We may not rewrite the contract or add to its language
under the guise of interpretation.  See Am. Mfrs. Mut. Ins. Co. v. Schaefer,
124 S.W.3d 154, 161–62 (Tex. 2003).  Rather, we must enforce the contract as
written.  See Royal Indem. Co. v. Marshall, 388 S.W.2d 176, 181 (Tex. 1965).
 If possible, we should avoid a construction that is unreasonable, oppressive,
inequitable, or absurd.  Pavecon, Inc. v. R-Com, Inc., 159 S.W.3d 219,
222 (Tex. App.—Fort Worth 2005, no pet.).  Language should be given its plain
grammatical meaning unless it definitely appears that the intention of the
parties would thereby be defeated.  Reilly v. Rangers Mgmt., Inc., 727
S.W.2d 527, 529 (Tex. 1987).  A writing is not ambiguous merely because it
lacks clarity or because a disagreement in interpretation arises.  DeWitt
Cnty. Elec. Coop., Inc. v. Parks, 1 S.W.3d 96, 100 (Tex. 1999).

          In
this case, there are a number of reasons why the language in section 1.3
demonstrates that the parties intended section 1.3 to be treated as one
covenant not to compete or solicit, with the single defined five-year time
restraint to apply to the single covenant as a whole.  First, in five different
instances within the language of section 1.3, the term “covenant” is used to
address section 1.3 as a single covenant, and one of those instances refers to
the section as “this covenant not to compete or solicit.”  This prominent
language belies Pickle’s claim that there are two separate covenants intended
by the language of section 1.3 and supports Johnson’s claim that the language
in section 1.3 unambiguously sets forth a single covenant not to compete or
solicit.

Furthermore,
the second to last paragraph of section 1.3 provides that a court may determine
that the “foregoing restrictions are too broad . . . including with
respect to time or space.”  The geographical “space” is defined once in the
beginning language of 1.3 as “within the Texas counties of Tarrant, Dallas, and
Denton.”  Likewise, “time” is defined in the first paragraph as a “five (5)
year period” that is to end “on the fifth (5th) anniversary of the Closing
Date.”  Both of these definitions demonstrate that the intent of the parties
was to define the “time or space” restrictions of section 1.3 at the beginning
and have them apply to the entire section being read as a single covenant. 
Focusing on the language of section 1.3, harmonizing each portion of the
section, and giving effect to each subparagraph therein, we conclude that as a
matter of law, the intention of the parties as expressed in the contract’s language
is that section 1.3 is to be treated as a single covenant not to compete or solicit
and that there is a single time constraint for a five-year period beginning
from the purchase date of the business.  Thus, the trial court did not err by
granting Johnson’s motion for summary judgment.  We overrule Pickle’s first
issue.

B.      Amended
Pleadings

In
his second issue, Pickle contends that the trial court erred by not allowing
him to file a second amended petition.  Pickle argues that the trial court
“specifically instruct[ed]” him to file an amended pleading after the summary
judgment hearing.  Pickle does not, however, point to any evidence in the
record that the trial court made such an instruction.  This court has examined
the record, and the record does not reflect that the trial court ever made such
an instruction.  Johnson counters that Pickle never sought or obtained leave to
amend his pleading and that thus he waived any potential error for our review. 
In its order, the trial court struck Pickle’s second amended petition
specifically because Pickle “did not obtain leave and such filing operate[d] as
a surprise” to Johnson.

After
a summary judgment hearing but before a trial court renders judgment, a party
must obtain leave of the court to amend a pleading.  Tex. R. Civ. P. 63; see
Austin v. Countrywide Homes Loans, 261 S.W.3d 68, 75 (Tex. App.—Houston
[1st Dist.] 2008, pet. denied) (“Once the hearing date for a motion for summary
judgment has passed, the movant must secure a written order granting leave in
order to file an amended pleading.”).

The
record demonstrates that Pickle did not obtain leave to file his second amended
petition.  Thus, the trial court did not err by striking this pleading.  We overrule
Pickle’s second issue.

C.      Alleged
Remaining Unresolved Issue

In
his third issue, Pickle contends that the trial court granted summary judgment
in Johnson’s favor based solely “for activities after the 5-year limitations of
the covenant had expired.”  Pickle further contends that “the trial court still
needed to address [Johnson’s] illicit activities while she was still employed
by [Pickle.]”  Thus, according to Pickle, there existed a remaining issue on
his breach of contract claim that was left unresolved by the trial court.

The
record establishes that Johnson moved for summary judgment predicated on the
defense that the five-year time limitation expired on December 23, 2007, and
that after that date, she “sent notice to some of the accounts she formerly
serviced” that she had left Pickle and would be opening her own business in
January.  In support of this position, Johnson included deposition testimony,
among other summary judgment evidence, averring that she did not contact former
clients until “the end of December,” after “the expiration of the agreement.”  Pickle
did not offer any summary judgment evidence contradicting Johnson’s evidence,
even though Johnsons’ evidence could have been readily controverted.  See
Morrison, 266 S.W.3d at 92.  Thus, the trial court implicitly addressed the
issue Pickle now contends remained after the trial court granted Johnson’s
summary judgment motion.  We overrule Pickle’s third issue.

D.      Attorneys’
Fees

In
his fourth issue, Pickle contends that the trial court erred by granting
Johnson attorneys’ fees as the prevailing party in this litigation.  Pickle
readily admits in his brief that his position is predicated on this court
having sustained one of his first three issues.  Because we have overruled
Pickle’s first three issues, we overrule his fourth issue as well.

IV.  Conclusion

          Having
overruled each of Pickle’s four issues, we affirm the trial court’s order and judgment.

 

 

BILL MEIER
JUSTICE

 

PANEL:  WALKER, MCCOY, and MEIER, JJ.

 

DELIVERED: 
September 15, 2011









[1]See Tex. R. App. P. 47.4.





[2]Even though Pickle labels
his first argument in terms of the trial court finding that Johnson “did not
violate the non-solicitation portion of the business sales agreement,” the body
of Pickle’s argument only addresses the trial court’s interpretation of the
non-solicitation agreement between the parties.