

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-10-00336-CV

RICKY J. PICKLE, INDIVIDUALLY,                  APPELLANT
AND D/B/A RJ PICKLE &
ASSOCIATES, CPA'S

V.

TRACI D. JOHNSON                                      APPELLEE

----------

### FROM THE 67TH DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

## I. INTRODUCTION

Appellant Ricky J. Pickle, individually, and d/b/a RJ Pickle & Associates, CPA's, appeals the trial court's grant of Appellee Traci D. Johnson's motion for summary judgment. In four issues, Pickle contends that the trial court erred by

---

[1]*See* Tex. R. App. P. 47.4.

finding that the parties' non-solicitation agreement contained a five-year limitation;[2] that the trial court erred by refusing to allow him to file a second amended petition; that the trial court did not dispose of all issues in its judgment; and that the trial court erred by awarding attorneys' fees to Johnson. We will affirm.

## II. BACKGROUND

Johnson, her father, and her uncle had a partnership in a certified public accountant business. Pickle purchased the business on December 23, 2002. Following the close of the sale, Pickle employed Johnson. Johnson remained an employee of Pickle until the fall of 2007, when she resigned. Sometime after she resigned, Johnson began competing with Pickle. In her course of business, Johnson sent notices to some of the accounts she formerly serviced both when she was a partner in the original business and later when she worked for Pickle.

On December 19, 2008, Pickle filed a breach of contract suit seeking damages and injunctive relief. Pickle pleaded that the agreement to purchase the original partnership from Johnson included two separate covenants. First, according to Pickle's pleadings, the contract of sale included a non-compete covenant with a time limit of five years. Second, Pickle pleaded that the contract of sale contained a separate non-solicitation agreement with no time limit and

---

[2]Even though Pickle labels his first argument in terms of the trial court finding that Johnson "did not violate the non-solicitation portion of the business sales agreement," the body of Pickle's argument only addresses the trial court's interpretation of the non-solicitation agreement between the parties.

that Johnson had breached that agreement. The language giving rise to both arguments is found in section 1.3 of the contract of sale, which reads in its entirety:

**1.3    Covenant Not to Compete or Solicit.** Upon the purchase of the Partnership's Assets covered by this Agreement and for a period ending on the fifth (5th) anniversary of the Closing Date, the Partnership, John L. Hodgkiss, Traci D. Johnson, and William R. Hodgkiss, jointly and severally, hereby each agree that they will not directly or indirectly within the Texas counties of Tarrant, Dallas, and Denton, enter into or engage generally in competition with Buyer in the accounting, auditing, tax preparation, or other similar or related businesses in which the Buyer is engaged on the Closing Date, either as an individual on his/her own or as a partner or joint venturer, or as an employee or agent for any person or entity, or as an officer, director, shareholder, manager, member, or otherwise. Further, the Partnership, John L. Hodgkiss, Traci D. Johnson, and William R. Hodgkiss shall not during such five (5) year period, directly or indirectly, copy, disclose, disseminate, divulge, communicate, furnish, reveal, use to the detriment of Buyer or for the benefit of any other person or persons, or misuse in any way any confidential or proprietary information or trade secrets of the Buyer or the Assets sold hereby, including, but not limited to, personnel information, financial information, customer information, accounting processes and procedures, correspondence, internal memoranda, or any other proprietary or technical information.

In addition, the Partnership, John L. Hodgkiss, Traci D. Johnson, and William R. Hodgkiss, jointly and severally each agree that they will not solicit any client or customer listed among the Assets being sold.

This covenant by the Partnership, John L. Hodgkiss, Traci D. Johnson, and William R. Hodgkiss is an independent agreement and the existence of any claim or cause of action of the Partnership, John L. Hodgkiss, Traci D. Johnson, or William R. Hodgkiss against Buyer will not constitute a defense to the enforcement by Buyer of this covenant. Buyer, the Partnership, John L. Hodgkiss, Traci D. Johnson, and William R. Hodgkiss hereby agree to the sum of FOUR THOUSAND AND NO/100 DOLLARS ($4,000.00) as consideration for this covenant. However, Buyer, the Partnership, John L. Hodgkiss, Traci D. Johnson, and William R. Hodgkiss agree that said sum shall not be construed to be liquidated damages for breach of said covenant and that irreparable harm will be sustained by Buyer if the Partnership, John L. Hodgkiss, Traci D. Johnson,

3

or William R. Hodgkiss violates the provisions of this paragraph. The Partnership, John L. Hodgkiss, Traci D. Johnson, and William R. Hodgkiss therefore agree Buyer may seek equitable as well as legal remedies against each of them if the Partnership, John L. Hodgkiss, Traci D. Johnson, or William R. Hodgkiss breaches or attempts to breach this covenant not to compete or solicit which may include, but not be limited to, a temporary restraining order and temporary injunction.

If a court determines that the foregoing restrictions are too broad or otherwise too restrictive under applicable law, including with respect to time or space, the court is hereby requested and authorized by the parties hereto to revise the foregoing restrictions to include the maximum restrictions allowed under the applicable law. Sellers expressly agree that breach of the foregoing would result in irreparable injuries to Buyer, that the remedy at law for any such breach will be inadequate and that upon breach of these provisions, Buyer, in addition to all other available remedies, shall be entitled as a matter of right to injunctive relief in any court of competent jurisdiction without the necessity of proving the actual damage to Byer [sic].

Notwithstanding the above to the contrary, this covenant is not intended to prevent John L. Hodgkiss from continuing his existing financial advisory business within its current scope of services.

Ultimately, Johnson filed a motion for summary judgment, contending that there are not two separate covenants in the agreement but that rather there is one covenant not to compete or solicit that contained a single five-year limitation agreement, which expired December 23, 2007. Johnson also sought attorneys' fees.

After a series of hearings, on May 3, 2010, the trial court found that the purchase agreement contained one covenant limited by a single five-year period that expired on December 23, 2007, and granted summary judgment in favor of Johnson. The trial court then held a hearing regarding attorneys' fees and later entered a final judgment, which states: "Because the Court's partial summary

4

judgments signed May 3, 2010, disposed of the balance of the claims pending in this cause, this Order specifically disposes of all claims between all parties in combination with earlier Orders." This appeal followed.

### III. DISCUSSION

### A. Time Limitation on Covenant Not to Compete or Solicit

In his first issue, Pickle contends that the trial court erred by granting Johnson's motion for summary judgment predicated on an interpretation of section 1.3 that it was the intent of the parties that the five-year limitation was intended to apply to the non-solicitation portion of the covenant not to compete or solicit. Specifically, Pickle argues that because the five-year limitation is in the first paragraph of section 1.3, where language pertaining to non-competition exists, and only the second paragraph specifically mentions a restraint upon solicitation of clients by the sellers, then the intent of the parties is clear that they intended to treat the two paragraphs as two distinct covenants. According to Pickle, the first paragraph relates to competition and the second paragraph relates to solicitation of existing clients by the seller at the time of sale. And, according to Pickle, the first paragraph contains a five-year limitation and the second paragraph contains none; thus, Pickle argues that section 1.3 was intended to be unlimited in time as it pertains to the solicitation of Johnson's former clients.

Johnson counters that portions of section 1.3 would be rendered meaningless under Pickle's interpretation. Johnson also contends that the plain

5

language of section 1.3 unambiguously expresses that the parties intended the entire section to be treated as one covenant, with the five-year limitation applying to the entire section as a whole.  The trial court granted Johnson's summary judgment and interpreted section 1.3 as having a single five-year limitation on competition and solicitation ending on December 23, 2007—five years after the sale of the business to Pickle.

### 1.    Summary Judgment Standard of Review

In a summary judgment case, the issue on appeal is whether the movant met the summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009).  We review a summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010).

We take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003).  We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could and disregarding evidence contrary to the nonmovant unless reasonable jurors could not.  *Mann Frankfort*, 289 S.W.3d at 848.  We must consider whether reasonable and fair-minded jurors could differ in their conclusions in light of all of the evidence

6

presented. *See Wal-Mart Stores, Inc. v. Spates*, 186 S.W.3d 566, 568 (Tex. 2006); *City of Keller v. Wilson*, 168 S.W.3d 802, 822–24 (Tex. 2005).

If uncontroverted evidence is from an interested witness, it does nothing more than raise a fact issue unless it is clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted. Tex. R. Civ. P. 166a(c); *Morrison v. Christie*, 266 S.W.3d 89, 92 (Tex. App.—Fort Worth 2008, no pet.).

A defendant who conclusively negates at least one essential element of a cause of action is entitled to summary judgment on that claim. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010), *cert. denied*, 131 S. Ct. 1017 (2011). Once the defendant produces sufficient evidence to establish the right to summary judgment, the burden shifts to the plaintiff to come forward with competent controverting evidence that raises a fact issue. *Van v. Pena*, 990 S.W.2d 751, 753 (Tex. 1999).

### 2. Contract Interpretation

When interpreting a contract, we must ascertain and give effect to the contracting parties' intent. *Perry Homes v. Cull*, 258 S.W.3d 580, 606 (Tex. 2008) (O'Neill, J., concurring), *cert. denied,* 120 S. Ct. 952 (2009). We focus on the language used in the contract because it is the best indication of the parties' intent. *Id.* We must examine the entire contract in an effort to harmonize and effectuate all of its provisions so that none are rendered meaningless. *Seagull Energy E & P, Inc. v. Eland Energy, Inc.*, 207 S.W.3d 342, 345 (Tex. 2006).

Therefore, we will not give controlling effect to any single provision; instead, we read all of the provisions in light of the entire agreement. *Id.* (*citing Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983)). We may not rewrite the contract or add to its language under the guise of interpretation. *See Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 161–62 (Tex. 2003). Rather, we must enforce the contract as written. *See Royal Indem. Co. v. Marshall*, 388 S.W.2d 176, 181 (Tex. 1965). If possible, we should avoid a construction that is unreasonable, oppressive, inequitable, or absurd. *Pavecon, Inc. v. R-Com, Inc.*, 159 S.W.3d 219, 222 (Tex. App.—Fort Worth 2005, no pet.). Language should be given its plain grammatical meaning unless it definitely appears that the intention of the parties would thereby be defeated. *Reilly v. Rangers Mgmt., Inc.*, 727 S.W.2d 527, 529 (Tex. 1987). A writing is not ambiguous merely because it lacks clarity or because a disagreement in interpretation arises. *DeWitt Cnty. Elec. Coop., Inc. v. Parks*, 1 S.W.3d 96, 100 (Tex. 1999).

In this case, there are a number of reasons why the language in section 1.3 demonstrates that the parties intended section 1.3 to be treated as one covenant not to compete or solicit, with the single defined five-year time restraint to apply to the single covenant as a whole. First, in five different instances within the language of section 1.3, the term "covenant" is used to address section 1.3 as a single covenant, and one of those instances refers to the section as "this covenant not to compete or solicit." This prominent language belies Pickle's claim that there are two separate covenants intended by the language of section

8

1.3 and supports Johnson's claim that the language in section 1.3 unambiguously sets forth a single covenant not to compete or solicit.

Furthermore, the second to last paragraph of section 1.3 provides that a court may determine that the "foregoing restrictions are too broad . . . including with respect to time or space." The geographical "space" is defined once in the beginning language of 1.3 as "within the Texas counties of Tarrant, Dallas, and Denton." Likewise, "time" is defined in the first paragraph as a "five (5) year period" that is to end "on the fifth (5th) anniversary of the Closing Date." Both of these definitions demonstrate that the intent of the parties was to define the "time or space" restrictions of section 1.3 at the beginning and have them apply to the entire section being read as a single covenant. Focusing on the language of section 1.3, harmonizing each portion of the section, and giving effect to each subparagraph therein, we conclude that as a matter of law, the intention of the parties as expressed in the contract's language is that section 1.3 is to be treated as a single covenant not to compete or solicit and that there is a single time constraint for a five-year period beginning from the purchase date of the business. Thus, the trial court did not err by granting Johnson's motion for summary judgment. We overrule Pickle's first issue.

### B. Amended Pleadings

In his second issue, Pickle contends that the trial court erred by not allowing him to file a second amended petition. Pickle argues that the trial court "specifically instruct[ed]" him to file an amended pleading after the summary

9

judgment hearing. Pickle does not, however, point to any evidence in the record that the trial court made such an instruction. This court has examined the record, and the record does not reflect that the trial court ever made such an instruction. Johnson counters that Pickle never sought or obtained leave to amend his pleading and that thus he waived any potential error for our review. In its order, the trial court struck Pickle's second amended petition specifically because Pickle "did not obtain leave and such filing operate[d] as a surprise" to Johnson.

After a summary judgment hearing but before a trial court renders judgment, a party must obtain leave of the court to amend a pleading. Tex. R. Civ. P. 63; *see Austin v. Countrywide Homes Loans*, 261 S.W.3d 68, 75 (Tex. App.—Houston [1st Dist.] 2008, pet. denied) ("Once the hearing date for a motion for summary judgment has passed, the movant must secure a written order granting leave in order to file an amended pleading.").

The record demonstrates that Pickle did not obtain leave to file his second amended petition. Thus, the trial court did not err by striking this pleading. We overrule Pickle's second issue.

## C. Alleged Remaining Unresolved Issue

In his third issue, Pickle contends that the trial court granted summary judgment in Johnson's favor based solely "for activities after the 5-year limitations of the covenant had expired." Pickle further contends that "the trial court still needed to address [Johnson's] illicit activities while she was still employed by

[Pickle.]"  Thus, according to Pickle, there existed a remaining issue on his breach of contract claim that was left unresolved by the trial court.

The record establishes that Johnson moved for summary judgment predicated on the defense that the five-year time limitation expired on December 23, 2007, and that after that date, she "sent notice to some of the accounts she formerly serviced" that she had left Pickle and would be opening her own business in January.  In support of this position, Johnson included deposition testimony, among other summary judgment evidence, averring that she did not contact former clients until "the end of December," after "the expiration of the agreement."  Pickle did not offer any summary judgment evidence contradicting Johnson's evidence, even though Johnsons' evidence could have been readily controverted.  *See Morrison*, 266 S.W.3d at 92.  Thus, the trial court implicitly addressed the issue Pickle now contends remained after the trial court granted Johnson's summary judgment motion.  We overrule Pickle's third issue.

### D.   Attorneys' Fees

In his fourth issue, Pickle contends that the trial court erred by granting Johnson attorneys' fees as the prevailing party in this litigation.  Pickle readily admits in his brief that his position is predicated on this court having sustained one of his first three issues.  Because we have overruled Pickle's first three issues, we overrule his fourth issue as well.

11

## IV. CONCLUSION

Having overruled each of Pickle's four issues, we affirm the trial court's order and judgment.

                                        BILL MEIER
                                        JUSTICE

PANEL:  WALKER, MCCOY, and MEIER, JJ.

DELIVERED:  September 15, 2011